**Karluk M. MAYWEATHERS; Dietrich J. Pennington; Jesus Jihad; Terrance Mathews; Aswad Jackson; Ansar Kees, Plaintiffs–Appellees,**

**and**

**United States of America, Intervenor,**

**v.**

**Anthony C. NEWLAND, individually and in his official capacity; Barry Smith, individually and in his official capacity; Cal A. Terhune; N. Bennett; M.E. Valdez, Defendants–Appellants.**

---

Karluk M. Mayweathers; Dietrich J. Pennington; Jesus Jihad; Terrance Mathews; Aswad Jackson; Ansar Kees, Plaintiffs–Appellees,

v.

Anthony C. Newland individually and in his official capacity; Barry Smith, individually and in his official capacity; Cal A. Terhune; N. Bennett; M.E. Valdez, Defendants–Appellants.

Karluk M. Mayweathers; Dietrich J. Pennington; Jesus Jihad; Terrance Mathews; Aswad Jackson; Ansar Kees, Plaintiffs–Appellees,

v.

Cal A. Terhune; A.C. Newland; Barry Smith; Bonnie Garibay; N. Fry; M.E. Valdez; N. Bennett; F.X. Chavez, Defendants–Appellants.

Nos. 01–16505, 01–16607, 01–17133.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Sept. 11, 2002.

Filed Dec. 27, 2002.

Bill Lockyer, Office of the Attorney General, Sacramento, CA, for the defendants-appellants.

Robert R. Anderson, Office of the Attorney General, Sacramento, CA, for the defendants-appellants.

Paul Gifford, Office of the Attorney General, Sacramento, CA, for the defendants-appellants.

Tami M. Warwick, Office of the Attorney General, Sacramento, CA, for the defendants-appellants.

Susan D. Christian, Law Office of Stewart Katz, Sacramento, CA, for the plaintiffs-appellees.

Robert D. McCallum, Jr., Office of the Attorney General of the United States, Washington, DC, for the intervenor.

John K. Vincent, Office of the Attorney General of the United States, Washington, DC, for the intervenor.

Mark B. Stern, Office of the Attorney General of the United States, Washington, DC, for the intervenor.

Michael S. Raab, Office of the Attorney General of the United States, Washington, DC, for the intervenor.

Before SCHROEDER, Chief Judge; D.W. NELSON and RAWLINSON, Circuit Judges.

## OPINION

D.W. NELSON, Senior Circuit Judge.

California State prison officials ("California") bring a facial challenge to the constitutionality of the Religious Land Use and Institutionalized Persons Act of 2000, 42 U.S.C. § 2000cc *et seq.* (2000) ("RLUIPA"), on various grounds. Their appeal arises from a series of preliminary injunctions, issued pursuant to RLUIPA, which allow Muslim prisoners to attend Friday afternoon religious services.

The district court upheld the statute as a constitutional exercise of Congress's Spending Clause authority. We affirm.[1]

### I. FACTUAL AND PROCEDURAL BACKGROUND

RLUIPA protects prisoners and other institutionalized people from government infringement on their practice of religion. Specifically, the statute prescribes that "[n]o government shall impose a substantial burden on the religious exercise" of prisoners unless the government can demonstrate that the burden both serves a compelling government interest and is the least restrictive means of advancing that interest. 42 U.S.C. § 2000cc–1(a) (2000).

A class of Muslim inmates imprisoned at Solano in California originally filed suit in 1996 against various officials of the California State prison system. They alleged

---

1. We have jurisdiction pursuant to 28 U.S.C. §§ 1291, 1292(a)(1).

that prison rules penalizing attendance at Friday afternoon religious services, called Jumu'ah, violated the First Amendment. They added a RLUIPA claim following its enactment in 2000.

California moved to dismiss the RLUIPA claim, arguing that the statute exceeded Congressional authority under the Spending Clause, the Commerce Clause, and the Fourteenth Amendment. California also attacked the statute as violative of the Establishment Clause of the First Amendment, the Tenth and Eleventh Amendments, and the principle of separation of powers. The United States intervened to defend RLUIPA as constitutional.

In a series of separate but related rulings, the district court upheld the constitutionality of RLUIPA, denied California's motion to dismiss, and granted the prisoners various preliminary injunctions. These injunctions barred prison officials from punishing prisoners for attending Jumu'ah services and prohibited officials from withholding good time credits from inmates who participated in Jumu'ah while this case proceeds.

## II. STANDARD OF REVIEW

We review the constitutionality of a statute de novo. *Eunique v. Powell*, 302 F.3d 971, 973 (9th Cir.2002).

## III. The Spending Clause

■ The Spending Clause allows Congress to further its policy objectives by conditioning the receipt of federal funds on compliance with federal mandates. *See South Dakota v. Dole*, 483 U.S. 203, 206, 107 S.Ct. 2793, 97 L.Ed.2d 171 (1987). This power is not limitless, however. A statute properly passed under the Spending Clause must meet certain requirements. First, the statute must be in pursuit of the general welfare. *Id.* at 207, 107 S.Ct. 2793. Second, any conditions on federal grants must be unambiguous, clearly communicating to states the consequences of their participation in the federally funded scheme. *Id.* Third, the Supreme Court has suggested that conditional federal grants *"might* be illegitimate if they are unrelated to the federal interest in particular national projects or programs." *Id.* (internal quotations and citation omitted) (emphasis added). Finally, other constitutional provisions may provide independent grounds for invalidating an otherwise proper exercise of Congress's Spending Clause authority. *Id.* at 208. RLUIPA meets all of these requirements, and the statute is a legitimate exercise of Congressional spending power.

## A. Promoting the General Welfare

■ Congress possesses great leeway to determine which statutory aims advance the general welfare. The Supreme Court has made it clear that "[w]hen money is spent to promote the general welfare, the concept of welfare or the opposite is shaped by Congress...." *Helvering v. Davis*, 301 U.S. 619, 645, 57 S.Ct. 904, 81 L.Ed. 1307 (1937). The Court, in the leading case on Spending Clause authority, reaffirmed that federal courts must "defer substantially" to Congress in determining if a statute advances the general welfare. *Dole*, 483 U.S. at 207, 107 S.Ct. 2793. In fact, the Court seems doubtful that failure to advance the general welfare could ever provide adequate grounds for invalidating a federal statute. *Id.* at 207 n. 2, 107 S.Ct. 2793.

In any event, protecting religious worship in institutions from substantial and illegitimate burdens *does* promote the general welfare. The First Amendment, by prohibiting laws that proscribe the free exercise of religion, demonstrates the great value placed on protecting religious worship from impermissible government

intrusion. By ensuring that governments do not act to burden the exercise of religion in institutions, RLUIPA is clearly in line with this positive constitutional value. Moreover, by fostering non-discrimination, RLUIPA follows a long tradition of federal legislation designed to guard against unfair bias and infringement on fundamental freedoms. *See, e.g.,* Title VI, 42 U.S.C. § 2000d *et seq.* (2002); Title VII, 42 U.S.C. § 2000e *et seq.* (2002); Title IX, 20 U.S.C. § 1681 (2002). No sound reason exists to disturb Congress's finding that RLUIPA promotes the general welfare.

### B. Unambiguous Condition

■ RLUIPA unequivocally states that it applies to any "program or activity that receives Federal financial assistance." 42 U.S.C. § 2000cc–1(b)(1). A spending power statute, as unambiguous in its conditional language as RLUIPA, ensures that the statute's *intention to impose a condition* is expressed clearly. By its plain language, RLUIPA clearly communicates that any institution receiving federal funds must not substantially burden the exercise of religion absent a showing that the burden is the least restrictive means of serving a compelling government interest. The fact that the least restrictive means standard is perhaps unpredictable because it has resulted in different determinations in different courts does not weaken the express conditional language. In fact, the Supreme Court has held that conditions may be "largely indeterminate," so long as the statute "provid[es] clear notice to the States that they, by accepting funds under the Act, would indeed be obligated to comply with[the conditions]." *Pennhurst State School and Hospital v. Halderman,* 451 U.S. 1, 24–25, 101 S.Ct. 1531, 67 L.Ed.2d 694 (1981). Congress is not required to list every factual instance in which a state will fail to comply with a condition. Such specificity would prove too onerous, and perhaps, impossible. Congress must, however, make the existence of the condition itself—in exchange for the receipt of federal funds—explicitly obvious. RLUIPA unambiguously creates this condition.

### C. Relatedness to the Federal Interest in National Projects or Programs

The Supreme Court has suggested that federal grants conditioned on compliance with federal directives *might* be illegitimate if the conditions share no relationship to the federal interest in particular national projects or programs. *Dole,* 483 U.S. at 207, 107 S.Ct. 2793. This possible ground for invalidating a Spending Clause statute, which only suggests that the legislation *might* be illegitimate without demonstrating a nexus between the conditions and a specified national interest, is a far cry from imposing an exacting standard for relatedness. The nonconclusive language leaves open the possibility for attacking a spending power statute on this basis, but it does not mean that a statute is automatically illegitimate.

The Court has stated more recently that "[s]uch conditions must ... bear some relationship to the purpose of the federal spending." *New York v. United States,* 505 U.S. 144, 167, 112 S.Ct. 2408, 120 L.Ed.2d 120 (1992) (citation omitted). The conditions in RLUIPA do share such a relationship. Congress has a strong interest in making certain that federal funds do not subsidize conduct that infringes individual liberties, such as the free practice of one's religion. The federal government also has a strong interest in monitoring the treatment of federal inmates housed in state prisons and in contributing to their rehabilitation. Congress may allocate federal funds freely, then, to protect the free exercise of religion and to promote rehabilitation. If the Supreme Court has in fact imposed a low-threshold relatedness test, RLUIPA satisfies it.

### D. Independent Constitutional Proscriptions

The inquiry does not end with the conclusion that RLUIPA is a valid exercise of Congress's Spending Clause authority.[2] Other constitutional provisions may provide independent bases for striking RLUIPA. *Dole*, 483 U.S. at 208, 107 S.Ct. 2793.

#### i. The Establishment Clause

■ The Establishment Clause of the First Amendment prohibits any government from enacting a law that would respect the establishment of religion. While this clause forbids Congress from advancing religion, the Supreme Court has interpreted it to allow, and sometimes to require, the accommodation of religious practices: "This Court has long recognized that the government may (and sometimes must) accommodate religious practices and that it may do so without violating the Establishment Clause." *Hobbie v. Unemployment Appeals Comm'n of Fla.*, 480 U.S. 136, 144–45, 107 S.Ct. 1046, 94 L.Ed.2d 190 (1987). Moreover, "in commanding neutrality the Religious Clauses do not require the government to be oblivious to impositions that legitimate exercises of state power may place on religious belief and practice." *Bd. of Educ. of Kiryas Joel Vill. Sch. Dist. v. Grumet*, 512 U.S. 687, 705, 114 S.Ct. 2481, 129 L.Ed.2d 546 (1994).

■ The three-part test developed in *Lemon v. Kurtzman* helps determine whether an accommodation statute achieves this neutrality by avoiding "sponsorship, financial support, and active involvement of the sovereign in religious activity." 403 U.S. 602, 612, 91 S.Ct. 2105, 29 L.Ed.2d 745 (1971) (quoting *Walz v. Tax Comm'n*, 397 U.S. 664, 668, 90 S.Ct.

1409, 25 L.Ed.2d 697 (1970)). A statute will survive an Establishment Clause attack if (1) it has a secular legislative purpose, (2) its primary effect neither advances nor inhibits religion, and (3) it does not foster excessive government entanglement with religion. *Id.* at 612–13, 91 S.Ct. 2105.

#### a. Secular Purpose

■ Just because RLUIPA addresses religion does not mean that its purpose is religious in nature. The secular purpose requirement does not "mean that the law's purpose must be unrelated to religion—that would amount to a requirement that the government show a callous indifference to religious groups, and the Establishment Clause has never been so interpreted." *Corp. of Presiding Bishop v. Amos*, 483 U.S. 327, 335, 107 S.Ct. 2862, 97 L.Ed.2d 273 (1987) (internal quotation and citation omitted). Nothing in RLUIPA indicates that wholly impermissible purposes, such as the advancement of religion, underlie RLUIPA. *See Bowen v. Kendrick*, 487 U.S. 589, 603, 108 S.Ct. 2562, 101 L.Ed.2d 520 (1988). Moreover, the Supreme Court has upheld statutes that "alleviate significant governmental interference with the ability of religious organizations to define and carry out their religious missions." *Corp. of Presiding Bishop*, 483 U.S. at 335, 107 S.Ct. 2862. RLUIPA intends a secular legislative purpose: to protect the exercise of religion in institutions from unwarranted and substantial infringement.

#### b. Primary Effect

The primary effect of RLUIPA neither advances nor inhibits religion. It does not impose affirmative duties on states that

---

**2.** Having established that RLUIPA satisfies the first three elements of the *Dole* test, we hold that Congress had the authority under the spending power to pass this statute. Accordingly, we need not decide whether Congress also had the authority to pass RLUIPA under the Commerce Clause.

would require them to facilitate or subsidize the exercise of religion. RLUIPA instead calls for exactly the opposite—forbidding states from imposing impermissible burdens on religious worship so that prisoners may practice their religion free from unlawful interference. The statute does not violate the Establishment Clause just because it seeks to lift burdens on religious worship in institutions without affording corresponding protection to secular activities or to non-religious prisoners. RLUIPA merely accommodates and protects the free exercise of religion, which the Constitution allows. *See Corp. of Presiding Bishop*, 483 U.S. at 338, 107 S.Ct. 2862.

### c. Excessive Entanglement

Finally, RLUIPA does not foster excessive government entanglement with religion. The statute, on its face, does not require "pervasive monitoring" to prevent the government from indoctrinating religion. *Agostini v. Felton*, 521 U.S. 203, 233, 117 S.Ct. 1997, 138 L.Ed.2d 391 (1997) (citation omitted). RLUIPA does not call on the federal government to supervise prisons and institutions closely to make sure federal funds do not sponsor religious practices. Unlike conferring a tax exemption on a religious organization or awarding aid to a faith-based school, RLUIPA removes burdens on religious exercise rather than according benefits. Likewise, RLUIPA does not require prison officials to develop expertise on religious worship or to evaluate the merits of different religious practices or beliefs. The statute itself defines religious exercise, 42 U.S.C. § 2000cc–5(7)(A), and requires only that states avoid substantially burdening these practices without a compelling justification.

■ Because RLUIPA has a secular legislative purpose, its primary effect is neither to advance nor inhibit religion, and it does not foster excessive government entanglement with religion, RLUIPA does not violate the Establishment Clause.

### ii. The Tenth Amendment

■ RLUIPA does not usurp the regulation of a core state function in violation of the Tenth Amendment. True, the prosecution and punishment of crime remains a basic police power. *See Kelly v. Robinson*, 479 U.S. 36, 47, 107 S.Ct. 353, 93 L.Ed.2d 216 (1986). However, RLUIPA does not regulate the operation of prisons. Under the statute, prison officials remain free to run their prisons as they see fit. RLUIPA just prohibits prison officials from unduly burdening inmates' free exercise of religion in the process.

The Tenth Amendment "[does] not concomitantly limit the range of conditions legitimately placed on federal grants." *Dole*, 483 U.S. at 210, 107 S.Ct. 2793. While Congress may not have authority to commandeer the management of state prisons, it "does have power to fix the terms upon which its money allotments to states shall be disbursed." *Id.* (citation omitted). If states disagree with the requirements of RLUIPA, they remain free to forgo federal funding and opt out of its mandates.[3]

### iii. The Eleventh Amendment

■ The Eleventh Amendment does not bar this suit against California State prison officials under RLUIPA. Citizens of a state may not sue their own state. *Hans v. Louisiana*, 134 U.S. 1, 10, 10 S.Ct. 504, 33 L.Ed. 842 (1890). This case, by contrast, involves a suit by citizens of Califor-

---

**3.** Federal funding comprises less than one percent of California's annual prison operat-

ing budget.

nia against *officials* of the State of California for prospective injunctive relief. *Ex Parte Young,* 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908). This case falls squarely within the *Ex Parte Young* exception to sovereign immunity and does not violate the Eleventh Amendment.

### iv. *The Principle of Separation of Powers*

RLUIPA likely is a response to *Employment Division v. Smith,* 494 U.S. 872, 110 S.Ct. 1595, 108 L.Ed.2d 876 (1990), which held that laws of general applicability that incidentally burden religious conduct do not offend the First Amendment. RLUIPA raises this standard by requiring states to demonstrate that prison regulations substantially burdening the free exercise of religion are the least restrictive means of achieving a compelling government interest. RLUIPA does not erroneously review or revise a specific ruling of the Supreme Court because the statute does not overturn the Court's constitutional interpretation in *Smith. See Miller v. French,* 530 U.S. 327, 341–43, 120 S.Ct. 2246, 147 L.Ed.2d 326 (2000). Rather, RLUIPA provides additional protection for religious worship, respecting that *Smith* set only a constitutional floor—not a ceiling—for the protection of personal liberty. *Smith* explicitly left heightened legislative protection for religious worship to the political branches. *Smith,* 494 U.S. at 890, 110 S.Ct. 1595.

### IV. CONCLUSION

We hold that Congress did not exceed its Spending Clause power in enacting RLUIPA.

**AFFIRMED.**