**CHOLLA READY MIX, INC.,**
**Plaintiff–Appellant,**

v.

**William CIVISH, BLM Safford, Arizona Field Office District Manager; Victor Mendez, Secretary of the Department of Transportation (ADOT); Jeff Swan, ADOT Holbrook District Engineer; William Belt, ADOT Environmental Planning Services Department; Thor Anderson, ADOT Official; Richard Duarte, ADOT Environmental Planning Section Manager; Bettina Rosenberg, ADOT Historic Preservation Coordinator; James Garrison, Arizona State Historic Preservation Officer; Robert Gasser, Arizona Parks Department Compliance Officer, Defendants–Appellees.**

**No. 03–15423.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted May 12, 2004.

Filed Sept. 1, 2004.

William Perry Pendley, Christopher T. Masey, Mountain States Legal Foundation, Lakewood, CO, for the plaintiff-appellant.

James N. Smith, Jr., Joe Acosta, Jr., Assistant Attorneys General, Phoenix, AZ, for the defendants-appellees.

Before B. FLETCHER, TROTT, and FISHER, Circuit Judges.

BETTY B. FLETCHER, Circuit Judge.

Cholla Ready Mix, Inc. ("Cholla") appeals the district court's dismissal of its complaint alleging that Arizona state officials' policy against using materials mined from Woodruff Butte in state construction projects violates its rights under the Establishment Clause, 42 U.S.C. §§ 1981, 1983, and 2000d, and the Arizona Constitution. We have jurisdiction under 28 U.S.C. § 1291, and we affirm.

## I. BACKGROUND

Dale McKinnon, who is Cholla's sole shareholder, and his family own a portion of Woodruff Butte.[1] In 1990, the McKinnon family leased part of Woodruff Butte and began mining it for aggregate materials used primarily for road construction. Shortly after mining operations began, the Hopi Tribe, Zuni Pueblo, and Navajo Nation (collectively, "the Tribes") passed resolutions against the mining because of Woodruff Butte's religious, cultural, and historical significance to these groups. In June 1991, the Arizona Department of Transportation (ADOT) granted a commercial source number allowing materials mined from the Butte to be used in state highway construction projects. In September 1991, the McKinnons bought the mined portion of Woodruff Butte.

The mining of Woodruff Butte led to a variety of disputes and litigation involving the Tribes, Cholla, construction contractors, and various Arizona and federal officials and agencies. In response, ADOT adopted strategies to discourage the use of materials from Woodruff Butte in state construction projects. In 1999, ADOT promulgated new commercial source regulations, which require each applicant for a commercial source number to submit an environmental assessment (EA) that considers, *inter alia*, adverse effects on places eligible for listing on the National Register of Historic Places (NRHP). Woodruff Butte was declared eligible for listing on the NRHP in or around 1990. On June 26, 2000, ADOT denied Cholla's application for a new commercial source number because of the projected adverse effects on historic property on Woodruff Butte. Without a commercial source number,

---

1. The background is drawn primarily from the complaint, because the court considers the facts alleged therein to be true for the purposes of reviewing a dismissal pursuant to Fed.R.Civ.P. 12(b)(6).

Cholla cannot provide aggregate materials for state highway construction projects, but Cholla remains free to sell its materials in the private market.

On June 25, 2002, Cholla filed suit in district court against various government[2] officials alleging that the policy against using materials from the Butte in state construction projects violates Cholla's rights under the Establishment Clause, federal civil rights laws, and the Arizona Constitution. The district court granted Cholla's motion for leave to file an amended complaint, but then granted the state defendants' motion to dismiss. After the district court denied Cholla's motion for reconsideration and granted its request for certification of final judgment against the state defendants, Cholla timely filed a notice of appeal to this court.

## II. STANDARD OF REVIEW

■ The court reviews de novo dismissals on the basis of Eleventh Amendment immunity. *Lovell v. Chandler,* 303 F.3d 1039, 1050 (9th Cir.2002). We also review de novo dismissals on the basis of a statute of limitations. *Mann v. Am. Airlines,* 324 F.3d 1088, 1090 (9th Cir.2003). Likewise, we review de novo dismissals for failure to state a claim under Fed.R.Civ.P. 12(b)(6), accepting all facts alleged in the complaint as true and construing them in the light most favorable to the plaintiff. *Karam v. City of Burbank,* 352 F.3d 1188, 1192 (9th Cir.2003). "However, the court is not required to accept legal conclusions cast in the form of factual allegations if those conclusions cannot reasonably be drawn from the facts alleged." *Clegg v. Cult Awareness Network,* 18 F.3d 752,

754–55 (9th Cir.1994). "Nor is the court required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Sprewell v. Golden State Warriors,* 266 F.3d 979, 988 (9th Cir.2001).

## III. DISCUSSION

### A. *Eleventh Amendment Immunity*

Cholla appeals the district court's holdings that the Eleventh Amendment bars its state law claims and its claim for damages under Title VI, 42 U.S.C. § 2000d.[3]

### 1. *Damages under Title VI*

Congress abrogated state immunity from damages under Title VI. *See* 42 U.S.C. § 2000d–7(a); *Alexander v. Sandoval,* 532 U.S. 275, 280, 121 S.Ct. 1511, 149 L.Ed.2d 517 (2001); *Miranda B. v. Kitzhaber,* 328 F.3d 1181, 1188–89 (9th Cir. 2003). Although we affirm on other grounds, we conclude that the district court erred by holding that the Eleventh Amendment bars Cholla's claims for damages under § 2000d.

### 2. *State Law Claims*

■ As the district court held, all of Cholla's state law claims are barred by the Eleventh Amendment, which precludes the adjudication of pendent state law claims against nonconsenting state defendants in federal courts. *See Pennhurst State Sch. & Hosp. v. Halderman,* 465 U.S. 89, 106, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984); *Raygor v. Regents of Univ. of Minn.,* 534 U.S. 533, 540–541, 122 S.Ct. 999, 152 L.Ed.2d 27

---

**2.** Cholla sued state and federal officials, but the federal defendants were dismissed by the parties' joint stipulation, and the state officials are the only remaining defendants in the case.

**3.** Cholla has waived any challenge to the district court's holding that the Eleventh Amendment bars its request for damages under § 1981.

(2002); *Ashker v. Cal.. Dep't of Corr.*, 112 F.3d 392, 394 (9th Cir.1997).[4]

Cholla's reliance on *Piatt v. MacDougall*, 773 F.2d 1032 (9th Cir.1985) to revive its state law claims as a substantive part of its § 1983 claim is misplaced. *Piatt* held that where a state statute provides prisoners a right to compensation for their work, they can bring a § 1983 claim alleging that the state revoked their right to pay without due process. *Id.* at 1035–37. *Piatt* recognizes that, because a due process claim necessarily fails if the plaintiff has no property interest in the relevant property, a federal due process claim may succeed or fail depending on whether the § 1983 plaintiff has a cognizable property interest under state law. *Id.* at 1035. However, *Piatt* does not permit plaintiffs to sue in federal court under § 1983 solely for violations of state law. Thus, *Piatt* is of no help to Cholla.

B. *Statutes of Limitations*

■ *The statutes providing Cholla's federal causes of action,* 42 U.S.C. §§ 1981,. 1983, and 2000d, do not contain their own statutes of limitations, so courts borrow the most appropriate state statute of limitations. *See Wilson v. Garcia,* 471 U.S. 261, 268, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985). For these claims, we borrow Arizona's statute of limitations for personal injury claims. *See Wilson,* 471 U.S. at 276–80, 105 S.Ct. 1938 (holding that the statute of limitations for personal injury claims applies in § 1983 suits); *Addisu v.*

*Fred Meyer, Inc.,* 198 F.3d 1130, 1140 (9th Cir.2000) (§ 1981 claims) (citing *Goodman v. Lukens Steel Co.,* 482 U.S. 656, 661–62, 107 S.Ct. 2617, 96 L.Ed.2d 572 (1987)); *Taylor v. Regents of Univ. of Cal.,* 993 F.2d 710, 711–12 (9th Cir.1993) (§ 2000d claims).[5] The applicable statute of limitations for personal injury claims in Arizona is two years. *See* Ariz.Rev.Stat. § 12–542; *TwoRivers v. Lewis,* 174 F.3d 987, 991 (9th Cir.1999). Thus, the district court correctly concluded that Cholla's only timely claim is its challenge to the rejection of its application for .a commercial source number. This claim brings into play Cholla's allegations of an Establishment Clause violation and discrimination on account of race.

■ Cholla argues that under the continuing violations doctrine, it may challenge defendants' ongoing policy against the use of materials from Woodruff Butte. Discrete acts are not actionable if time barred, even if related to acts alleged in timely filed charges. *See National R.R. Passenger Corp. v. Morgan,* 536 U.S. 101, 113–14, 122 S.Ct. 2061, 153 L.Ed.2d 106 (2002); *Carpinteria Valley Farms, Ltd. v. County of Santa Barbara,* 344 F.3d 822, 828–29 (9th Cir.2003); *RK Ventures, Inc. v. City of Seattle,* 307 F.3d 1045, 1061–62 (9th Cir.2002). Nonetheless, the time bar makes little difference to Cholla's requests for declaratory and injunctive relief. By challenging the denial of Cholla's application for a commercial source number, with-

4. We have recognized an exception to *Pennhurst* where the state official is sued in a personal capacity. *See, e.g., Ashker,* 112 F.3d at 394–95. All defendants in this case were sued in their official capacities, so this exception does not apply.

5. A four-year statute of limitations governs actions arising under federal statutes enacted after December 1, 1990. 28 U.S.C. § 1658. This uniform limitations period applies, for

example, to hostile work environment and wrongful termination claims under § 1981 that were made possible by the Civil Rights Act of 1991. *See Jones v. R.R. Donnelley & Sons Co.,* —— U.S. ——, ——— ——, 124 S.Ct. 1836, 1845–46, —— L.Ed.2d —— (2004). However, Cholla's claims were not made possible by a post–1990 statute or amendment and thus are not covered by § 1658's four-year limitations period. *See id.*

out which Cholla's aggregate materials cannot be used in state construction projects, Cholla is challenging Arizona's policy against using materials from Woodruff Butte. Moreover, acts occurring more than two years before Cholla filed suit may be relevant background material in support of its timely claim. *Morgan*, 536 U.S. at 113, 122 S.Ct. 2061.[6]

### C. Establishment Clause Claim

Cholla alleges that the defendants' policy against using materials from Woodruff Butte in state construction projects violates the Establishment Clause of the First Amendment. On appeal, Cholla emphasizes the liberal notice pleading requirements and argues that the district court improperly evaluated the strength of Cholla's claim. Accepting as true the facts alleged and construing them in the light most favorable to Cholla, we conclude that the district court properly dismissed this claim. No evidence could bolster Cholla's Establishment Clause claim because it is premised on flawed analysis of the governing law.

■■■■ Government conduct does not violate the Establishment Clause if (1) it has a secular purpose, (2) its principal or primary effect is not to advance or inhibit religion, and (3) it does not foster excessive government entanglement with religion. *See, e.g., Lemon v. Kurtzman*, 411 U.S. 192, 93 S.Ct. 1463, 36 L.Ed.2d 151 (1971). Particular attention is paid to whether the challenged action has the purpose or effect of endorsing religion. *County of Allegheny v. ACLU*, 492 U.S. 573, 592, 109 S.Ct. 3086, 106 L.Ed.2d 472 (1989).

### 1. Secular Purpose

■■■■ It is clear from Cholla's complaint that defendants' actions have the secular purpose of carrying out state construction projects in a manner that does not harm a site of religious, historical, and cultural importance to several Native American groups and the nation as a whole.

■■■■ Putting aside for now the historical and cultural importance of Woodruff Butte, the secular purpose prong "does not mean that the law's purpose must be unrelated to religion—that would amount to a requirement that the government show a callous indifference to religious groups." *Corp. of Presiding Bishop v. Amos*, 483 U.S. 327, 335, 107 S.Ct. 2862, 97 L.Ed.2d 273 (1987) (internal quotation marks omitted). Carrying out government programs to avoid interference with a group's religious practices is a legitimate, secular purpose. *Id.; Kong v. Scully*, 341 F.3d 1132, 1140 (9th Cir.2003) ("Accommodation of a religious minority to let them practice their religion without penalty is a lawful secular purpose."); *Mayweathers v. Newland*, 314 F.3d 1062, 1068 (9th Cir. 2002). Cholla has alleged no facts that would support a conclusion that the state defendants were not motivated at least in part by this secular purpose. *See, e.g., Am. Family Ass'n, Inc. v. City and County of San Francisco*, 277 F.3d 1114, 1121 (9th Cir.2002) (stating that a practice must be wholly motivated by religious purpose to fail the secular purpose test).

### 2. Primary Effect

■■■ According to Cholla's complaint, ADOT faced years of controversy about

---

6. We note that the district court held that a two-year statute of limitations applies to all of Cholla's claims, but it appears that a one-year statute of limitations governs Cholla's state law claims. *See* Ariz.Rev.Stat. § 12–821; *Flood Control Dist. of Maricopa County v. Gaines*, 202 Ariz. 248, 43 P.3d 196, 200 (Ct. App.2002). Nevertheless, the district court correctly held that the Eleventh Amendment bars Cholla's state law claims.

the destruction of Woodruff Butte. A federal district court in previous litigation awarded the Hopi Tribe a preliminary injunction requiring consultation with the Tribe before spending federal funds on a construction project using materials from Woodruff Butte because of the Butte's historical and cultural importance. The complaint's descriptions of the controversy and litigation over the land; the cultural and historical importance of Woodruff Butte in addition to its religious significance; and the Arizona State Historic Preservation Officer's conclusion that the Butte is an 'important cultural landmark' are inconsistent with Cholla's claim that advancing religion is the principal or primary effect of defendants' actions.

Because of the unique status of Native American societies in North American history, protecting Native American shrines and other culturally-important sites has historical value for the nation as a whole, much like Greece's preservation of the Parthenon, an ancient Greek temple of worship. Similarly, because of the central role of religion in human societies, many historical treasures are or were sites of religious worship. The Establishment Clause does not require governments to ignore the historical value of religious sites. Native American sacred sites of historical value are entitled to the same protection as the many Judeo–Christian religious sites that are protected on the NRHP, including the National Cathedral in Washington, D.C.; the Touro Synagogue, America's oldest standing synagogue, dedicated in 1763; and numerous churches that played a pivotal role in the Civil Rights Movement, including the Sixteenth Street Baptist Church in Birmingham, Alabama.

Defendants' policy does not convey endorsement or approval of the Tribes' religions. *See County of Allegheny*, 492 U.S. at 592, 109 S.Ct. 3086; *Buono v. Norton*, 371 F.3d 543, 548–50 (9th Cir.2004) (holding that maintenance of a cross on public land violates the Establishment Clause because a reasonable observer might see the cross as an endorsement of Christianity). There is no suggestion that the state defendants favor tribal religion over other religions or that they would not protect sites of historical, cultural, and religious importance to other groups.

Moreover, defendants' policy does not *advance* religion, but rather implements ADOT's decision that state construction projects should be carried out in a way that does not *interfere* with the Tribes' religious practices or destroy religious sites that have historical significance. Accommodating religious practices that does not amount to an endorsement is not a violation of the Establishment Clause. *See Hobbie v. Unemployment Appeals Comm'n of Fla.*, 480 U.S. 136, 144–45, 107 S.Ct. 1046, 94 L.Ed.2d 190 (1987) ("This Court has long recognized that the government may (and sometimes must) accommodate religious practices and that it may do so without violating the Establishment Clause."); *Kong*, 341 F.3d at 1139–40 (9th Cir.2003) (holding that accommodating a religious minority in the administration of government programs does not offend the Establishment Clause); *Mayweathers*, 314 F.3d at 1068–69 (9th Cir.2002) (holding that Congress may require states to accommodate prisoners' religious practices without impermissibly advancing religion).

### 3. Excessive Entanglement

Cholla has not alleged facts that would support an inference that the defendants' actions foster excessive government entanglement with religion. The only fact alleged relevant to entanglement is that the Tribes were consulted in the process of evaluating Cholla's application

for a commercial source number. Some level of interaction between government and religious communities is inevitable; entanglement must be "excessive" to violate the Establishment Clause. *Agostini v. Felton,* 521 U.S. 203, 233, 117 S.Ct. 1997, 138 L.Ed.2d 391 (1997); *KDM ex rel. WJM v. Reedsport School Dist.,* 196 F.3d 1046, 1051 (9th Cir.1999) (noting that courts consistently find that routine administrative contacts with religious groups do not create excessive entanglement). In determining whether government action creates excessive entanglement with religion, the Supreme Court has looked to the character and purpose of the institutions benefitted. *See Bowen v. Kendrick,* 487 U.S. 589, 615–16, 108 S.Ct. 2562, 101 L.Ed.2d 520 (1988) (concluding that monitoring of government grants given to nonprofit organizations that provide educational services did not amount to excessive entanglement because religiously affiliated organizations that may receive government funding are not "pervasively sectarian"). The institutions benefitted here, Native American tribes, are not solely religious in character or purpose. Rather, they are ethnic and cultural in character as well. *See Bear Lodge Multiple Use Ass'n v. Babbitt,* 2 F.Supp.2d 1448, 1456 (D.Wyo.1998) (concluding that a government policy benefiting Native American tribes did not constitute excessive entanglement with religion because "Native American tribes ... are not solely religious organizations, but also represent a common heritage and culture").

Moreover, Cholla does not allege that the government officials participate in the Tribe's religious practices, inquire about the substance of their religious views, or monitor their religious practices. The facts alleged cannot support the conclusion that defendants' actions excessively entangle the government with the Tribes' religions.

In conclusion, the Establishment Clause does not bar the government from protecting an historically and culturally important site simply because the site's importance derives at least in part from its sacredness to certain groups.

### D. Discrimination Claims

Cholla alleges that the state defendants' policy against the use of Cholla's aggregate in state construction projects violates its rights under the Civil Rights Act of 1866, 42 U.S.C. § 1981, which prohibits racial discrimination in the making and enforcement of contracts, by interfering with its right to contract freely to sell materials mined from Woodruff Butte. Additionally, Cholla alleges that the defendants violated its rights under Title VI, 42 U.S.C. § 2000d, which prohibits racial discrimination in programs that receive federal funding.

The district court correctly concluded that Cholla failed to state a claim that the defendants discriminated against it on the basis of race. Cholla's complaint contains vague allegations that the defendants' policy "discriminates against Cholla in favor of the Navajo, Hopi, and Zuni Indian Tribes." Had Cholla a viable claim, Cholla would have standing to sue for racial discrimination, even though it is a corporation, if it "either suffers discrimination harm cognizable under § 1981, or has acquired an imputed racial identity." *Thinket Ink Info. Res., Inc. v. Sun Microsystems, Inc.,* 368 F.3d 1053, 1060 (9th Cir.2004); *see also Parks Sch. of Bus., Inc. v. Symington,* 51 F.3d 1480, 1488 (9th Cir.1995) (holding that a corporation had standing to sue under § 1981 alleging that defendants discriminated against it because it contracts with racial minorities).

■ Cholla's complaint does not allege that Cholla has an imputed racial identity and does not explain how the company suffered from racial discrimination. Cholla's complaint fails to allege facts from which one could infer that Cholla has an imputed racial identity, for example the race of Cholla's owner, McKinnon, or of anyone affiliated with Cholla. Cholla's complaint devotes itself primarily to arguing that defendants were motivated by the religious significance of the Butte, without alleging any facts from which one could infer that anyone's race in any way motivated the state defendants' actions. The district court did not err in dismissing Cholla's discrimination claims.[7]

### E. *Claim under § 1983*

■ Section 1983 creates a cause of action for the vindication of federal rights. *See* 42 U.S.C. § 1983. Cholla treats its § 1983 claim as an independent, substantive claim. However, "one cannot go into court and claim a 'violation of § 1983'—for § 1983 by itself does not protect anyone against anything." *Chapman v. Houston Welfare Rights Org.*, 441 U.S. 600, 617, 99 S.Ct. 1905, 60 L.Ed.2d 508 (1979). "Section 1983 does not create any substantive rights; rather it is the vehicle whereby plaintiffs can challenge actions by governmental officials." *Henderson v. City of Simi Valley*, 305 F.3d 1052, 1056 (9th Cir. 2002). Cholla has no cause of action under § 1983 because it has not stated a viable claim that defendants violated its federal rights.

### IV. CONCLUSION

All of the allegations in Cholla's complaint are barred by the Eleventh Amend-ment, time barred, or fail to state a claim upon which relief could be granted. Accordingly, the district court's dismissal of Cholla's complaint is

### AFFIRMED.

---

**7.** The defendants argue that *programs* that receive federal funding, rather than the individual defendants who Cholla sued, are the proper defendants in a Title VI suit. *See, e.g., Shotz v. City of Plantation*, 344 F.3d 1161, 1169–70 (11th Cir.2003); *Buchanan v. City of Bolivar*, 99 F.3d 1352, 1356 (6th Cir.1996). Because Cholla failed to state a claim under Title VI, we do not reach this question.