IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| JOHN THOMAS ENTLER,<br><br>　　　　　　　　Appellant,<br><br>　　　v.<br><br>ERIC JACKSON, MICHELE WOOD,<br>MICHAEL HATHAWAY, HENRI<br>FISCHER, JEFFERY FLICK,<br>THOMAS KANTAK, and DAWN M.<br>TAYLOR,<br><br>　　　　　　　　Respondents. | No. 83581-5-I<br><br>DIVISION ONE<br><br>UNPUBLISHED OPINION |

DíAZ, J. — John Entler, representing himself, appeals the summary judgment dismissal of his complaint against Department of Corrections (DOC) officials, alleging multiple violations of the Religious Land Use and Institutionalized Persons Act of 2000 (RLUIPA).[1] Entler argues that he raised questions of material fact as to whether the challenged policies and decisions substantially burdened his religious practice and, if so, whether those policies and decisions were not the least restrictive means of serving a compelling state interest. We find that none of those policies and decisions imposed a substantial burden, we need not reach any further issues, and we affirm.

---

[1] 42 U.S.C. §§ 2000cc-1 to 2000cc-5.

Citations and pin cites are based on the Westlaw online version of the cited material.

## I.  FACTS

John Entler is an offender currently incarcerated at the Monroe Correctional Complex - Twin Rivers Unit (MCC-TRU).  Entler is a practitioner of the Messianic Essene faith, which is not a recognized religion within DOC.

DOC Policy 560.200 governs religious programming at DOC.  Pursuant to that policy, an inmate requesting accommodation for a "mandated religious requirement" not currently recognized by DOC must submit a religious requirement information sheet (RRIS) to the chaplain.  To verify that the inmate's request is consistent with their stated religion's "faith standards," the RRIS asks the inmate to "provide the name and contact information of an outside religious authority of the religious faith group who may confirm and further explain the mandated religious requirement."  The religious authority may not be an offender or an offender's family member.  To verify the authenticity of a religion, DOC contacts a "credentialed representative" of the faith in the larger religious community outside the prison and considers the religion's history, tenets, practices, and requirements.

In January 2020, Entler made several informal requests to DOC prison officials for numerous religious accommodations.  MCC-TRU Associate Superintendent Michele Wood advised Entler that prison officials are not authorized to grant a religious accommodation that would otherwise violate established DOC policy, and that he needed to work with MCC-TRU Chaplain Henri Fischer pursuant to DOC Policy 560.200.

On February 11, 2020, Entler submitted a partially completed RRIS to Fischer. Entler made the following requests:

(1) Use of the Offender Betterment Fund to·pay filing fees to relieve the substantial burdens that DOC has imposed on my sincerely held religious beliefs and practices to [preach] and [defend] the gospel from government intrusion there-upon;

(2) Access to a single cell so that I can practice religious ceremonies without interruption and to maintain an area that I can keep holy and free from worldly influences;

(3) Access to a personal bank account [out-side of DOC] where I can collect donations to my Non-profit church that is registered with the State of Washington and a non-profit organization;

(4) Access to a laptop and internet to peach [sic] the gospel and post my religious articles and for non-religious entities to read and study;

(5) Access to the internet, Facebook, and email accounts, with supervision by the chaplain, so that I can carry out the functions of my non-profit church;

(6) Access to a 30-40 watt (non-LED) light bulb to burn my oils during religious ceremonies and prayers in my cell;

(7) Access to the Chapel and/or unit conference rooms to conduct religious services and bible studies with other inmates in the facility; and

(8) An all Kosher [Glatt] diet (non-vegetarian), that I can take back to my cell and eat separately from worldly influences, while eating my sacred meals.

In the blank spaces for providing the "name and contact information of an outside religious authority of the religious faith group who may confirm and further explain the mandated religious requirement," Entler wrote "Per Federal Law I do not have to provide" and "Under Federal Law I do not have to provide this information, and it is improper for DOC to require me to provide this before DOC will allow me the religious exercises."

In response, DOC staff member Dawn Taylor asked Entler to provide an updated RRIS that includes (1) a description of the "mandated/required practice or program of the Messianic Essens faith that is currently unavailable" and (2) "contact information for an

outside religious authority to obtain additional information about the religious practices of the Messianic Essenes." Entler did not do so. Taylor conducted some internet research to determine whether Entler's requested accommodations were required by that faith, but her research turned up nothing that would confirm this. Without additional information, Taylor was unable to "substantiate the need for [Entler's] requested accommodations," so she did not approve his requests.

Entler then filed a lawsuit for declaratory and injunctive relief against the DOC officials involved in reviewing his requests for religious accommodations. He alleged that the DOC officials violated RLUIPA and failed to follow DOC policy by refusing to accommodate his requests. The trial court denied Entler's motion for partial summary judgment against defendant Dawn Taylor, in which he sought an injunction compelling her to accommodate his requests. The DOC officials then moved for summary judgment dismissal of Entler's claims, which the trial court granted. Entler appeals.

## II. ANALYSIS

We review a trial court's decision on a summary judgment motion de novo. Merceri v. Bank of N.Y. Mellon, 4 Wn. App. 2d 755, 759, 434 P.3d 84 (2018). Summary judgment is appropriate if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. CR 56(c). We consider the facts and reasonable inferences from the facts in the light most favorable to the nonmoving party. Reid v. Pierce County, 136 Wn.2d 195, 201, 961 P.2d 333 (1998). Once the moving party has submitted adequate affidavits to support summary judgment, the burden shifts to the nonmoving party to set forth specific facts that rebut the moving party's contentions and that reveal a material issue of fact. Dombrosky v. Farmers Ins. Co. of Wash., 84 Wn.

App. 245, 253, 928 P.2d 1127 (1996). "The nonmoving party may not rely on speculation or argumentative assertions that unresolved factual issues remain." Little v. Countrywood Homes, Inc., 132 Wn. App. 777, 780, 133 P.3d 944 (2006). We may affirm summary judgment on any basis supported by the record regardless of whether the argument was made below. Bavand v. OneWest Bank, 196 Wn. App. 813, 825, 385 P.3d 233 (2016).

RLUIPA provides that "[n]o government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution ... even if the burden results from a rule of general applicability," unless the government demonstrates that the burden is "in furtherance of a compelling governmental interest" and is "the least restrictive means of furthering that ... interest." 42 U.S.C. § 2000cc-1(a). In the first instance, "Under RLUIPA, the challenging party bears the initial burden of proving that his religious exercise is grounded in a sincerely held religious belief ..., and that the government's action substantially burdens his religious exercise." Holt v. Hobbs, 574 U.S. 352, 360-61, 135 S. Ct. 853, 190 L. Ed. 2d 747 (2015) (citations omitted).

RLUIPA is "more generous to the religiously observant than the Free Exercise Clause." Jones v. Slade, 23 F.4th 1124, 1139 (9th Cir. 2022). "By its terms, RLUIPA is to be construed broadly in favor of protecting an inmate's right to exercise his religious beliefs." Warsoldier v. Woodford, 418 F.3d 989, 995 (9th Cir. 2005) (citing 42 U.S.C. § 2000cc-3(g)). Federal courts have favored inmates' rights in two ways relevant to the present matter.

First, "Courts typically give credence to assertions of sincerely held religious beliefs in absence of any challenge to their sincerity or religious motives, and so long as they are not 'so bizarre, so clearly nonreligious in motivation, as not to be entitled to protection

5

under the Free Exercise Clause.' " Naoko Ohno v. Yuko Yasuma, 723 F.3d 984, 1011 (9th Cir. 2013) (quoting Thomas v. Review Bd. of Ind. Emp't Sec. Div., 450 U.S. 707, 715-16, 101 S. Ct. 1425, 67 L.Ed.2d 624 (1981)).

Second, RLUIPA broadly defines "religious exercise" to include "any exercise of religion, whether or not compelled by, or central to, a system of religious belief." 42 U.S.C. § 2000cc-5(7)(A). RLUIPA's protections are "not limited to beliefs which are shared by all of the members of a religious sect." Holt, 574 U.S. at 362 (quoting Thomas, 450 U.S. at 715-16). In other words, RLUIPA "bars inquiry into whether a particular belief or practice is 'central' to a prisoner's religion." Cutter v. Wilkinson, 544 U.S. 709, 725 n.13, 125 S. Ct. 2113, 161 L. Ed. 2d 1020 (2005).

RLUIPA does not define what constitutes a "substantial burden" on religious exercise. However, the Ninth Circuit has described a "substantial burden" as a "limitation of religious practice … [that] impose[s] a significantly great restriction or onus upon such exercise.' " Walker v. Beard, 789 F.3d 1125, 1135 (9th Cir. 2015) (quoting San Jose Christian Coll. v. City of Morgan Hill, 360 F.3d 1024, 1034 (9th Cir. 2004)). In other words, "[a] substantial burden must place more than an inconvenience on religious exercise"; it must have a "tendency to coerce individuals into acting contrary to their religious beliefs" or "exert [ ] substantial pressure on an adherent to modify his behavior and to violate his beliefs." Guru Nanak Sikh Soc'y of Yuba City v. Cnty. of Sutter, 456 F.3d 978, 988 (9th Cir. 2006) (internal quotation marks omitted).

If the inmate makes this initial showing of sincerity and a substantial burden, "the burden flips and the government must 'demonstrate[ ] that imposition of the burden on that person' is the least restrictive means of furthering a compelling governmental

interest." Ramirez v. Collier, 142 S. Ct. 1264, 1277, 212 L. Ed. 2d 262 (2022) (quoting 42 U.S.C. § 2000cc-1(a)). "Although RLUIPA adopts a compelling interest standard, context matters in the application of the standard, and courts should act with 'due deference to the experience and expertise of prison and jail administrators in establishing necessary regulations and procedures to maintain good order, security and discipline, consistent with consideration of costs and limited resources.' " Jones, 23 F.4th at 1141 (quoting Cutter, 544 U.S. at 723). To satisfy the least restrictive means standard, the government must "sho[w] that it lacks other means of achieving its desired goal without imposing a substantial burden on the exercise of religion by the objecting part[y]." Holt, 574 U.S. at 364-65 (quoting Burwell v. Hobby Lobby Stores, Inc., 573 U.S. 682, 728, 693, 134 S. Ct 2751, 189 L.Ed.2d 675 (2014)).

DOC does not challenge the sincerity of Entler's religious beliefs or dispute that his requested accommodations qualify as "religious exercises" under RLUIPA as they are broadly grounded in those beliefs. Rather, DOC asserts that its policies and practices did not constitute a "substantial burden" on Entler's religious exercise and -- even if they did -- they were the least restrictive means of furthering a compelling governmental interest. We agree as to the former and need not reach the latter.

A. RRIS Form

Entler does not object to an RRIS application process that requires prisoners to provide detailed information about their religious needs so that it can determine whether those needs implicate a compelling governmental interest. Rather, he argues that DOC imposed a substantial burden and violated RLUIPA by requiring him to verify or authenticate his religious beliefs and practices through an outside authority.

7

While courts typically do not question the sincerity of the prisoner's belief, "a prisoner's request for an accommodation must be sincerely based on a religious belief and not some other motivation." Holt, 574 U.S. at 360-361. The threshold question of sincerity "is, of course, a question of fact." See United States v. Seeger, 380 U.S. 163, 185, 85 S. Ct. 850, 13 L. Ed. 2d 733 (1965) (addressing religion-based claims of conscientious objectors under the Universal Military Training and Service Act). Further, "nothing in RLUIPA bars a prison from 'question[ing] whether a prisoner's religiosity, asserted as the basis for a requested accommodation, is authentic.' " Haight v. Thompson, 763 F.3d 554, 565 (6th Cir. 2014) (quoting Cutter, 544 U.S. at 725 n.13). Courts have permitted prisons to require inmates to fill out a variety of forms for a variety of preliminary purposes, finding that they do not thereby create a substantial burden. See, e.g., Ghashiyah v. Litscher, 278 F. App. 654, 658 (7th Cir. 2008) (finding frivolous the inmate's contention that his religious rights were substantially burdened under RLUIPA by the requirement that he fill out a form to obtain religious property); San Jose Christian Coll., 360 F.3d at 1035 (holding that requiring a church to submit a complete rezoning application did not constitute a substantial burden as it "imposes no restriction whatsoever on [its] religious exercise"). Here, there is no evidence, which creates a genuine issue of material fact, to rebut the prison's contention that obtaining contact information for an outside religious authority allows prison officials to gather information regarding the sincerity of the religious belief and authenticity of the desired practices. These questions are plainly relevant to the factual determination of whether an inmate's requests are protected by RLUIPA, even if the prison will later not question either fact.

Entler cites Yellowbear v. Lampert, 741 F.3d 48, 55 (10th Cir. 2014) for the proposition that "[w]hen a sincere religious claimant draws a line ruling in or out a particular religious exercise, 'it is not for [courts] to say that the line that the religious claimant draws was not a reasonable one.' " (quoting Thomas, 450 U.S. at 707).  But Taylor made no determination as to Entler's sincerity or the nature of his religious exercise.  Rather, she stated that she was unable to process Entler's RRIS because he refused to provide additional information in support of his requests, which did not permit her to perform her preliminary and valid inquiry.  In other words, unlike in Yellowbear, Entler cut off the inquiry before it got started by refusing to fill out the forms.

More importantly, Entler has not raised a material question of fact as to whether DOC substantially burdened his religious practices by requiring him to provide contact information for an outside religious authority in order to process his RRIS.  As stated in Yellowbear, a burden on a religious exercise rises to the level of substantial when the government "(1) requires the plaintiff to participate in an activity prohibited by a sincerely held religious belief, (2) prevents the plaintiff from participating in an activity motivated by a sincerely held religious belief, or (3) places considerable pressure on the plaintiff to violate a sincerely held religious belief."  Yellowbear, 741 F.3d at 55.  On this record, it is not apparent how requiring contact information for other adherents to his religion violates the precepts of his religion in any of those three ways.

We now turn to Entler's individual requests for religious accommodations.

B.  Offender Betterment Fund

On February 9, 2020, Entler informally requested use of the Offender Betterment Fund [OBF] "to pay the Filing Fee for my Religious Law Suit under RLUIPA . . . it's my

9

religious requirements to defend the gospel in court as you prevent me from living my life according to the Gospel and spreading the Gospel." Pursuant to DOC Policy 200.200, "[a]ssets of the OBF will be used solely for offender betterment activities that enhance the security and orderly operation of a facility by reducing idleness and encouraging positive development of family and community ties." Expenditures on behalf of identifiable individuals or groups to the exclusion of the majority of the population are generally not authorized. MCC-TRU Superintendent Eric Jackson denied Entler's request on the ground that DOC Policy 200.200(IV)(B)(1) defines "legal services" as an unauthorized expenditure.

Entler argues that "[h]aving access to the [OBF] to defend the Gospel that the Government seeks to suppress would be consistent with fulfilling the duty to defend the Gospel against Government intrusion." He contends that denying OBF funds for this purpose is a substantial burden because it prohibits him from fulfilling his religious duties. But RLUIPA "does not impose affirmative duties on states that would require them to facilitate or subsidize the exercise of religion." Mayweathers v. Newland, 314 F.3d 1062, 1068-69 (9th Cir. 2002). Entler remains free to file legal actions, as he has here, in defense of his professed faith. Entler has not shown a substantial burden in the prison's unwillingness to pay for his litigation fees.

   C. Single Cell

In January 2020, Entler submitted a "Cell/Bed Change Request" to MCC-TRU Correctional Sergeant Thomas Kantak, stating that he needed a single cell "so that I am not exposed to circumstances that violate my sincerely held religious beliefs." Kantak denied Entler's request because he had not followed procedure for requesting a single

cell.  DOC provides a sign-up process to be put on a waiting list for a single cell, with priority given to inmates who require accommodation based on the Americans with Disabilities Act (ADA) or who need to be housed in a single cell for safety and security purposes.  Any remaining single cells are assigned based on a waiting list.

Entler argues that denying him immediate transfer to a single cell substantially burdens his religious beliefs because Essene spirituality prohibits him from associating with non-believers and he needs a sacred solitary space to pray.  But, without more, "being housed with an inmate who does not share the plaintiff's religious beliefs 'does not inhibit or constrain [the p]laintiff's religious conduct.' " Jehovah v. Clarke, 798 F.3d 169, 180 (4th Cir. 2015) (explaining that plaintiff "takes issue with the *exposure* to non-Christians, not with any *effect* it has on his religious activities") (reversing the lower court on other grounds) (alteration in original) (quoting Steele v. Guilfoyle, 76 P.3d 99, 102 (Okla. Civ. App. 2003)); see also Wahid v. Lake, No. CV 19-9041-JGB (SP), 2020 WL 7345679, at *9 (C.D. Cal. July 22, 2020) (court order) ("an inability to achieve an ideal religious experience in prison does not mean defendants have substantially burdened plaintiff's exercise of religion").[2]  Entler has not created a factual issue explaining how residing with non-believers or having any persons present during prayer is more than an "inconvenience."  Guru Nanak Sikh Soc'y of Yuba City, 456 F.3d at 988.  In addition, Entler has not shown that he would be unable to meet these needs by requesting to be housed with an inmate who shares his religious beliefs and praying when his cellmate is not present.  See Cutter, 544 U.S. at 726 ("should inmate requests for religious

---

[2] "Washington appellate courts should not, unless necessary for a reasoned decision, cite or discuss unpublished opinions in their opinions."  GR 14.1(c).

accommodations become excessive, impose unjustified burdens on other institutionalized persons, or jeopardize the effective functioning of an institution, the facility would be free to resist the imposition."). Thus, Entler has not shown how the prison's actions have created a substantial burden.

D. Personal Bank Account

Entler asserts that he needs access to a personal bank account outside DOC to collect contributions to his church. This is so, he argues, because the Essenes used "on[e] pot to put all their funds in" and tithing is holy. DOC explained that Entler's request raises a security concern that a private account could be used to perpetrate fraud. This is a particular concern for Entler because he has a record of convictions for fraud and theft. Although current DOC policy does not specifically allow individuals to establish new accounts while incarcerated, Entler has access to a trust account managed by DOC where funds can be deposited. Entler does not explain why he cannot collect tithes through his DOC trust account or why an individual outside DOC could not collect the tithes. Without such an explanation, this court has no basis to determine there is an issue of material fact as to whether there is a substantial burden on his tithing.

E. Computers and Electronic Communication

Entler contends that he needs a laptop, internet access, email, and social media to preach, defend, and spread the gospel. DOC explained that "there are many security concerns with allowing an inmate to have a laptop and access to the internet," such as facilitating crimes, harassing victims, or scamming money from the public. DOC also explained that prison staff do not have time to supervise individuals while using the internet. Entler argues that the trial court misapplied RLUIPA by making the substantial

12

burden inquiry turn on whether he had alternative means of exercising his religion. Entler has not explained how his religious practice is substantially burdened by this limitation, given that he may proselytize within the prison or by mail. DOC Policy 560.200 expressly allows for "the sharing of information regarding a person's religious belief" in prison. Again, without such an explanation, this court is unable to identify an issue of material fact as to whether there is a substantial burden on his preaching and spreading of his religion.

F. Burning Incense and Oils

Entler asserts that DOC's denial of his request for a specific type of lightbulb to burn oils in his cell during prayer substantially burdened his religious practice. DOC explained that "[t]he burning of any substance by any means carries a risk of fire hazard" and that "allowing inmates to burn anything in their cells unsupervised is prohibited."

Entler contends that a light bulb is "not an ignition source that produces a fire." DOC argues that Entler's religious practice is not substantially burdened because he may burn smoke-producing substances in religious activity areas, with the ignition source provided by the chaplain or designee pursuant to DOC Policy 560.200. This response is well taken. Similar to the other requests above, without such an explanation, this court has no basis to determine whether there is a substantial burden created by the requirement to burn oil in the designated areas, rather than his cell.

G. Conference Room Access

On January 22, 2020, Entler sent a kite to MCC-TRU Correctional Unit Supervisor Jeffrey Flick, requesting the use of a conference room for weekly Bible study for himself and eight other inmates. Flick denied the request because Entler did not use the correct

13

sign-up process and because at the time Entler made the request only five individuals were allowed in the conference room to accommodate social distancing required to prevent the spread of COVID-19.

Entler asserts that Flick substantially burdened his religious practice by denying him access to the chapel and conference room. But the record shows that Entler may access the conference room as long as he uses the designated sign-up process and complies with the limitation on the total number of conference room users. Similarly, Entler asserts that Fischer substantially burdened his religious practice by failing to secure a volunteer for an Essene religious service. But Entler refused to work with Fischer to find a volunteer for his religious services. DOC's requirement that Entler follow standard procedure and fill out forms in requesting use of the chapel or conference room did not substantially burden his religious exercise. See San Jose Christian Coll., 360 F.3d at 1035.

## H. Diet

Entler argues that his religion requires him to consume an "all Kosher (Glatt) diet" to eat in his cell alone. Entler acknowledges that DOC provides a Kosher meal under Orthodox Jewish standards, which he describes as "half vegetarian (Parva) and half meat (Glatt)." Entler asserts that the vegetarian portion of the meal is "enough to make you puke" and that his Essene beliefs require him to not eat "detestable" foods. He further asserts that eating his meals in the dining hall "totally conflicts with my sincerely held religious beliefs against being [] yoked together with non-believers."

These are conclusory statements, and do nothing to explain how the Parva portion of his meal eaten in the presence of others substantially burdens his religion. A

nonmoving party cannot defeat a motion for summary judgment with conclusory statements of fact.  Overton v. Consol. Ins. Co., 145 Wn.2d 417, 430–31, 38 P.3d 322 (2002).

Affirmed.

_Díaz, J._

WE CONCUR:

_Smith, A.C.J._   _Dwyer, J._