*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

File Name: 05a0390p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT
_____

No. 02-3270
JON B. CUTTER; J. LEE HAMPTON,

*Plaintiffs-Appellees,*

UNITED STATES OF AMERICA,

*Intervenor-Appellee,*

*v.*

REGINALD WILKINSON; DAVID SCHWARTZ;
NICHOLAS G. MENEDEZ; L. C. COVAL; K. L. BROWN;
GEORGE D. ALEXANDER; DIANNE WALKER; JIM
ERWIN; RON CARNEIN; RUDY PRINGLE; WALTER
LOWERY,

*Defendants-Appellants.*

No. 02-3299
JOHN MILLER, et al.,

*Plaintiffs-Appellees,*

UNITED STATES OF AMERICA,

*Intervenor-Appellee,*

*v.*

REGINALD WILKINSON; DAVID SCHWARTZ; TERRY
COLLINS; CHERYL HART; CHARLES R. GRIFFIN;
CHARLES GRIFFIN, Chaplain,

*Defendants-Appellants.*

No. 02-3301
JOHN W. GERHARDT,

*Plaintiff-Appellee,*

UNITED STATES OF AMERICA,

*Intervenor-Appellee,*

*v.*

ALAN LAZAROFF, Warden; KENNETH BYERS; DON

Nos. 02-3270/3299/3301

WILSON; MARY HENDERSON; SHERRY WILLIAMSON;
KRISTINA HACKETT; STEVEN WEINGART; RON
CLIFTON; ROBERT ENGLUND; CHARLES CONRAD;
STACHA DOTY; JACK TAYLOR; WILLIAM BLANEY;
CAROL MARTIN; JUNE COLEMAN; DAVE MORRIS;
VANCE YORK; SUSAN COOLIE; STEPHANIE WALKER;
RACHEL HETTINGER; KENNETH E. MCDONALD,
                              *Defendants-Appellants.*

On Remand from the United States Supreme Court.
Nos. 97-00382; 98-00275; 95-00517—
James L. Graham, Edmund A. Sargus, Jr., District Judges.

Argued:  September 10, 2003

Decided and Filed:  September 13, 2005

Before:  MOORE and GILMAN, Circuit Judges; TARNOW, District Judge.[*]

_____

**COUNSEL**

_____

**ARGUED:**  Todd R. Marti, OFFICE OF THE ATTORNEY GENERAL, Columbus, Ohio, for
Appellants. David A. Goldberger, OHIO STATE UNIVERSITY COLLEGE OF LAW - CLINICAL
PROGRAMS, Columbus, Ohio, Michael S. Raab, UNITED STATES DEPARTMENT OF
JUSTICE, Washington, D.C., for Appellees.  **ON BRIEF:**  Todd R. Marti, OFFICE OF THE
ATTORNEY GENERAL, Columbus, Ohio, for Appellants.  David A. Goldberger, OHIO STATE
UNIVERSITY COLLEGE OF LAW - CLINICAL PROGRAMS, Columbus, Ohio, Michael S.
Raab, Mark B. Stern, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., Benson
A. Wolman, WOLMAN & ASSOCIATES, Columbus, Ohio, for Appellees.  Marc D. Stern,
AMERICAN JEWISH CONGRESS, STEPHEN WISE CONGRESS HOUSE, New York, New
York, for Amici Curiae.

_____

**OPINION**

_____

    RONALD LEE GILMAN, Circuit Judge.  These consolidated cases come to us on remand
from the United States Supreme Court.  In all three, Ohio prisoners sued state corrections officials
for alleged violations of the First Amendment's Free Exercise Clause and of the Religious Land Use
and Institutionalized Persons Act (RLUIPA), 42 U.S.C. § 2000cc-1 (2000).  The prison officials
mounted a facial challenge to the constitutionality of the section of RLUIPA that applies to
institutionalized persons, arguing that the statute violates the Establishment Clause of the First
Amendment, is barred by the Tenth Amendment, and exceeds Congress's powers under both the

_____

[*]The Honorable Arthur J. Tarnow, United States District Judge for the Eastern District of Michigan, sitting by
designation.

Spending and Commerce Clauses. In response, the United States intervened to defend the constitutionality of RLUIPA.

The district court, after adopting the Report and Recommendation of the magistrate judge that rejected all of the prison officials' arguments, upheld the Act. *Gerhardt v. Lazaroff*, 221 F. Supp. 2d 827, 829 (S.D. Ohio 2002). On an interlocutory appeal, we reversed the judgment of the district court, reaching only the Establishment Clause issue. *Cutter v. Wilkinson*, 349 F.3d 257, 259-60 (6th Cir. 2003) (hereinafter *Cutter I*). The inmates sought review by the Supreme Court, which reversed and remanded the case for further proceedings. *Cutter v. Wilkinson*, 125 S. Ct. 2113, 2125 (2005) (hereinafter *Cutter II*). We now address the prison officials' remaining constitutional challenges, and, finding none persuasive, **AFFIRM** the judgment of the district court.

# I. BACKGROUND

## A.        Factual and statutory background

Much of the factual and procedural background of the cases is set forth in our prior opinion and that of the Supreme Court, *see Cutter II*, 125 S. Ct. at 2117-2120; *Cutter I*, 349 F.3d at 260-61, and is not repeated here. The history and substance of RLUIPA remain central to our analysis, however, and are therefore set forth in some detail below.

### 1.        History of RLUIPA

In 1990, the Supreme Court held in *Employment Division, Department of Human Resources of Oregon v. Smith*, 494 U.S. 872, 878-82 (1990), that laws of general applicability that incidentally burden religious conduct are not subject to strict-scrutiny review under the First Amendment's Free Exercise Clause. Congress responded to *Smith* by enacting the Religious Freedom Restoration Act of 1993 (RFRA), 107 Stat. 1488, 42 U.S.C. § 2000bb-1 to -4. RFRA bars the government from "substantially burden[ing] a person's exercise of religion even if the burden results from a rule of general applicability," unless the government can proffer a compelling interest and show that the law "is the least restrictive means of furthering" that interest. 42 U.S.C. § 2000bb-1(a), (b). This test effectively reinstated the strict-scrutiny standard that the Court had rejected in *Smith*. Four years after RFRA's passage, the Court invalidated the Act as applied to the states and their subdivisions, holding that RFRA exceeded Congress's remedial powers under Section 5 of the Fourteenth Amendment. *City of Boerne v. Flores*, 521 U.S. 507, 532-36 (1997). The statute remains in force, however, as applied to the federal government and federal territories and possessions. *See Cutter II*, 125 S. Ct. at 2118 n.2.

Seeking to fill the gap created by *City of Boerne*, Congress passed RLUIPA in 2000, this time invoking its powers under the Spending and Commerce Clauses. *See* U.S. Const. Art I, § 8, cls. 1, 3. RLUIPA makes RFRA's strict-scrutiny standard applicable whenever a substantial burden is imposed on religious exercise by a state government and (1) occurs "in a program or activity that receives Federal financial assistance," or (2) "affects, or removal of that substantial burden would affect," interstate or foreign commerce. *See* 42 U.S.C. § 2000cc-1(b)(1-2). But if the only jurisdictional basis is the Commerce Clause, RLUIPA offers state officials the option of proving, as an affirmative defense, that the substantial burden on religious exercise—or the removal thereof—would not in the aggregate substantially affect interstate or foreign commerce. *See id.* § 2000cc-2(g).

Section 3 of RLUIPA, the only part of the statute at issue in the present case, creates a private cause of action for institutionalized and incarcerated persons who allege that a state government has substantially burdened their religious conduct. *See* 42 U.S.C. § 2000cc-1(a), 2(a). The strict-scrutiny standard mandated by § 3 significantly altered the framework for evaluating inmates' Free Exercise claims that had prevailed since the Court's decision in *O'Lone v. Estate of*

*Shabazz*, 482 U.S. 342 (1987), which held that prison regulations infringing on inmates' rights under the Free Exercise Clause are valid so long as the regulations are "reasonably related to legitimate penological interests." *Id.* at 349 (quoting *Turner v. Safley*, 482 U.S. 78, 89 (1987)).

At oral argument before the Supreme Court, Chief Justice Rehnquist raised the question of whether RLUIPA suffers from the same constitutional infirmities as the provisions of RFRA previously invalidated in *City of Boerne*. *See* Transcript of Oral Argument at 4-5, *Cutter II*, 125 S. Ct. 2113 (2005) (No. 03-9877). But the Solicitor General explained that RLUIPA is not "an effort to rewrite a rule of decision for all cases like RFRA was," *id.*, and the Court's opinion notes that RFRA, unlike RLUIPA, "lacked a Commerce Clause underpinning or a Spending Clause limitation to recipients of federal funds." *Cutter II*, 125 S. Ct. at 2118; *see also Mayweathers v. Newland*, 314 F.3d 1062, 1070 (9th Cir. 2002) (rejecting a similar separation-of-powers challenge to RLUIPA and concluding that "RLUIPA does not erroneously review or revise a specific ruling of the Supreme Court because the statute does not overturn the Court's constitutional interpretation in *Smith*."). With these doubts resolved, we now turn to the prison officials' other constitutional challenges.

### 2.      *ODRC's receipt of federal funds*

Throughout this litigation, the Ohio Department of Rehabilitation and Corrections (ODRC) has consistently received federal funding. ODRC was the beneficiary of approximately $25.5 million per year when RLUIPA went into effect in September of 2000. *See* Brief for Petitioners at 7-8, *Cutter II*, 125 S. Ct. 2113 (2005) (No. 03-9877) (chronicling the amount and types of grants received between 2001 and 2004). That amount, though substantial, comprised less than one percent of ODRC's annual budget. By 2004, when the parties filed their briefs in the Supreme Court, ODRC expected to receive over $35 million in federal funds—just over 2% of its approximately $1.6 billion budget. *See id.*

The federal government provides grants to ODRC directly and by funding other Ohio departments, which then transfer those funds to ODRC. Direct federal grants to ODRC fall into three broad categories: general operations, prisoner improvement, and prisoner subsistence. Such grants include the Violent Offender Incarceration and Truth in Sentencing Incentive Grants; the State Criminal Alien Assistance Program; grants intended for prisoner education, job training, and treatment for drug addiction; and monthly payments under the Federal School Breakfast Program and Federal School Lunch Program.

### 3.      *ODRC's connections to interstate commerce*

The prisoners characterize ODRC's links to interstate commerce as threefold. First, ODRC acquires from the stream of commerce goods and services that it uses in prison operations, ranging from medical supplies to long-distance telephone service. ODRC's second connection is its role in sponsoring programs that allow inmates to produce goods and provide services for buyers outside of Ohio. Finally, ODRC transports prisoners between states pursuant to prisoner-exchange agreements with other states and with the federal government. We need not delve more deeply into ODRC's commercial operations, however, because we do not reach the prison officials' Commerce Clause challenge for the reasons explained in Part II.C. below.

### B.      Procedural background

The plaintiffs in the present cases are prisoners in the custody of ODRC, all of whom belonged to non-mainstream religious groups. They filed suit against various Ohio corrections officials, alleging initially that the officials had violated their rights under the Free Exercise Clause of the First Amendment (as applied to the states through the Fourteenth Amendment). ODRC, the prisoners maintained, refused to accommodate their religious beliefs by, among other things,

denying them access to literature and ritual items and failing to provide a chaplain trained in their religions. The prisoners later added a claim under RLUIPA after the statute's passage in 2000.

The prison officials moved to dismiss the inmates' RLUIPA claims, insisting that the statute was unconstitutional on its face and as applied. Pursuant to 28 U.S.C. § 2403(a), the United States intervened to defend the constitutionality of the statute. All three cases were consolidated before the district court, which adopted the Report and Recommendation of the magistrate judge denying the motions to dismiss and upholding the validity of RLUIPA.

This court reversed. *Cutter I*, 349 F.3d at 260. Reaching only the officials' First Amendment challenge, we held that RLUIPA violated the Establishment Clause because it had "the impermissible effect of advancing religion" by favoring religious rights over other fundamental rights. *Id.* at 264-268.

The prisoners sought and obtained review by the Supreme Court. After consideration, the Court reversed and remanded, holding that the statute did not, "on its face, exceed the limits of permissible government accommodation of religious practices." *Cutter II*, 125 S. Ct. at 2117. At the same time, the Court refused to pass on the prison officials' other constitutional challenges, observing that we had not reached them. *Id.* at 2120 n.7. Taking up those challenges, we now conclude that RLUIPA is permissible Spending Clause legislation that is not barred by the Tenth Amendment.

## II. ANALYSIS

### A.     Standard of review

The prison officials' facial constitutional challenges involve purely legal issues. We review the district court's ruling on such issues de novo. *See United States v. Sawyers*, 409 F.3d 732, 735 (6th Cir. 2005) ("Questions concerning the constitutionality of a statute are reviewed *de novo*."); *Gable v. Patton*, 142 F.3d 940, 944 (6th Cir. 1998) ("Because the four provisions are challenged with regard to facial constitutionality, thus implicating only issues of law, . . . our standard of review is de novo.").

### B.     Spending Clause challenge

We start with first principles. The Spending Clause gives Congress the authority "to lay and collect Taxes, Duties, Imposts and Excises, to pay the Debts and provide for the common Defence and general Welfare of the United States." U.S. Const. Art. I, § 8, cl. 1. This authority includes the power to require states to comply with federal directives as a condition of receiving federal funds. *See South Dakota v. Dole*, 483 U.S. 203, 206 (1987) (holding that Congress may require each state to raise its minimum drinking age to 21 in order to receive its full share of federal highway funds). In addition, Congress may use its spending power to pursue objectives outside of Article I's "enumerated legislative fields." *Id.* at 207 (quoting *United States v. Butler*, 297 U.S. 1, 65 (1936)).

The Court's decision in *Dole* guides our analysis. *Dole* sets forth five limitations on the federal spending power. First, the language of Article I requires that Congress use its power to further "the general welfare." *Dole*, 483 U.S. at 207. The second limitation requires Congress to state all conditions on the receipt of federal funds "unambiguously" so as to "enabl[e] the States to exercise their choice knowingly, cognizant of the consequences of their participation." *Id.* (quoting *Pennhurst State Sch. & Hosp. v. Halderman*, 451 U.S. 1, 17 (1981)). Third, the conditions attached to federal funds might be invalid if they are not related "to the federal interest in particular national projects or programs." *Dole*, 483 U.S. at 207-08 (quoting *Massachusetts v. United States*, 435 U.S. 444, 461 (1978) (plurality opinion)). The fourth limitation is that financial incentives offered by

Congress must not be so significant that they amount to coercion. *Dole*, 483 U.S. at 211. Finally, spending and conditions on funds must not violate any other constitutional provision. *Id*. at 208.

The prison officials do not explicitly contend that RLUIPA violates the first *Dole* limitation, and with good reason. In *Dole*, the Supreme Court instructed the lower courts to "defer substantially to the judgment of Congress" in deciding what constitutes "the general welfare," *id.* at 207, going so far as to suggest that the "general welfare" restriction might not be "judicially enforceable . . . at all." *Id.* at 208 n.2.

Whatever might be the outer limits of the "general welfare" restriction, two circuits have succinctly explained why RLUIPA fits comfortably within that limitation. *See Mayweathers v. Newland*, 314 F.3d 1062, 1066-67 (9th Cir. 2002)*; Charles v. Verhagen*, 348 F.3d 601, 607 (7th Cir. 2003). The Ninth Circuit in *Mayweathers* placed RLUIPA within a "long tradition of federal legislation designed to guard against unfair bias and infringement on fundamental freedoms." 314 F.3d at 1067 (citing the anti-discrimination provisions of Title VI, Title VII, and Title IX). In *Charles*, the Seventh Circuit followed suit, concluding that "RLUIPA's attempt to protect prisoners' religious rights and to promote the rehabilitation of prisoners falls squarely within Congress' pursuit of the general welfare under its Spending Clause authority." 348 F.3d at 607. Heeding the Supreme Court's instruction to "defer substantially" to Congress's legislative judgment, we agree with our sister circuits that RLUIPA furthers the general welfare.

The prison officials next argue that RLUIPA runs afoul of the second *Dole* limitation, which requires that conditions attached to federal grants be "unambiguous." *Dole*, 483 U.S. at 207. We think that the statutory language of RLUIPA, which explains that the Act applies to "any program or activity that receives Federal financial assistance," 42 U.S.C. § 2000cc-1(b)(1), is not ambiguous.

Nevertheless, Ohio's prison officials urge that Spending Clause legislation "requires a level of specificity beyond that applicable to other legislation." As support, they cite without elaboration the Court's decision in *Pennhurst*, 451 U.S. at 51. The prison officials in *Charles* attempted a similar *Pennhurst*-based challenge to RLUIPA, arguing that the statute's "least restrictive means" standard constituted an ambiguous condition. In rejecting the officials' reading of *Pennhurst*, the Seventh Circuit reasoned that Congress need not "delineate every instance in which a State may or may not comply with the least restrictive means test." 348 F.3d at 608. RLUIPA's clear language, the court said, put Wisconsin "on notice" of the statutory conditions. *Id.* Nothing more is required under *Pennhurst*, which held that Congress need provide no more than "clear notice" to the states that funding is conditioned upon compliance with certain standards. 451 U.S. at 25. The plain language of RLUIPA provides ample notice to potential funding recipients, and we therefore reject the prison officials' argument that the statute violates the second *Dole* limitation.

The prison officials' principal objections to RLUIPA center on *Dole*'s third requirement that conditions on federal grants be related to a federal interest. *See Dole*, 483 U.S. at 207-08; *Charles*, 348 F.3d at 608. They assert the absence of a sufficient relationship between the conditions in RLUIPA and the federal interest in the projects and programs that are funded by federal grants. A straightforward reading of *Dole* and the two cases from our sister circuits, however, exposes the flaws in the prison officials' contentions.

*Dole* is the Supreme Court's most recent statement regarding the necessary relationship between funding conditions and the federal interest in the funded program. At issue in *Dole* was Congress's requirement that each state establish a minimum drinking age of 21 or else face the possibility of losing five percent of its federal highway funds. *Id*. at 211. The Court expressly reserved the issue of how strong the connection must be between a condition on funding and the purpose of the funds in order for the condition to pass constitutional muster. *Id*. at 209 n.3. But the majority held that the condition in question—establishing a minimum drinking age of at least

21—was sufficiently related to Congress's purpose of ensuring safe interstate travel. *Id*. at 208. The opinion suggests that a condition on federal funding is constitutional so long as it is "reasonably calculated to address" the federal interest. *Id*. at 209 ("Congress conditioned the receipt of federal funds in a way reasonably calculated to address this particular impediment to a purpose for which the funds are expended.").

In the present case, the conditions set forth in RLUIPA are reasonably calculated to address the federal government's interest in the rehabilitation of state prisoners. As to the purpose of the federal funding, the magistrate judge found that "plaintiffs have identified specific programs within ODRC [that] both receive federal funding and deal specifically with inmate rehabilitation." The Court's Spending Clause jurisprudence does not mandate that the federal funds actually be spent on religious activities, and the prison officials' arguments to the contrary are unavailing. *See Charles*, 348 F.3d at 609 ("That the [Department of Corrections] does not allocate federal funding specifically to religious programs is of no moment.").

Even if the funds disbursed to ODRC are not allocated to religious activities, a prison's compliance with RLUIPA still satisfies one of the statute's main purposes, which is to allow inmates greater freedom of religion in order to promote their rehabilitation. *See* 146 Cong. Rec. S6678-02, S6689 (statement of Sen. Kennedy) ("Sincere faith and worship can be an indispensable part of rehabilitation, and these protections should be an important part of that process."). We thus conclude that the conditions imposed by RLUIPA and the federal funds received by ODRC are both directed at the goal of prisoner rehabilitation, establishing a sufficient nexus between the two as required by *Dole*. The RLUIPA requirements, in other words, are "reasonably calculated" to address the federal interest in inmate rehabilitation. *See Dole*, 483 U.S. at 209.

Our conclusion regarding the third *Dole* limitation comports with those reached by the Seventh and Ninth Circuits. Emphasizing Congress's dual interests in preventing federal funding recipients from infringing individual liberties and in promoting inmate rehabilitation, the Ninth Circuit held that "Congress may allocate federal funds freely" to meet both objectives. *See Mayweathers*, 314 F.3d at 1067. "If the Supreme Court has in fact imposed a low-threshold relatedness test," the court said, "RLUIPA satisfies it." *Id.*

The Seventh Circuit endorsed the Ninth Circuit's approach in *Mayweathers* and also disposed of an additional argument that the prison officials in the present case make—namely, that the federal interest is not sufficiently related to the conditions because ODRC receives only a minimal percentage of its budget from the federal coffers. *See Charles*, 348 F.3d at 609. In *Charles*, the court rejected the argument of the Wisconsin Department of Corrections that RLUIPA failed *Dole*'s relatedness prong because federal funding comprised only 1.6 percent of the Department's annual budget. The Seventh Circuit concluded: "Nothing within the Spending Clause jurisprudence, or RLUIPA for that matter, suggests that States are bound by the conditional grant of money only if the State receives or derives a certain percentage . . . of its budget from federal funds." *Id.* Like the *Charles* court, we have found no authority supporting the prison officials' bald assertion that the relatively small amount of federal funding received alters the Spending Clause analysis. We therefore join our sister circuits in holding that RLUIPA satisfies the *Dole* relatedness requirement.

Our conclusion as to *Dole*'s relatedness prong is not shaken by Justice Thomas's suggestion that RLUIPA "may well exceed Congress' authority under . . . the Spending Clause." *Cutter II*, 125 S. Ct. at 2125 n.2 (Thomas, J., concurring). In support of this interpretation, Justice Thomas cited only his separate concurrence in *Sabri v. United States*, 541 U.S. 600, 613 (2004), an opinion in which he advocated a more restrictive reading of the Necessary and Proper Clause of Article I. No other Justice joined Justice Thomas's opinions in either *Cutter* or *Sabri*, and *Dole* remains the controlling law on conditional grants of federal money. Furthermore, even Justice Thomas

acknowledged that ODRC's "voluntary acceptance of Congress' condition undercuts Ohio's argument that Congress is encroaching on its turf." *Cutter II*, 125 S. Ct. at 2129 (Thomas, J., concurring). We therefore find nothing in Justice Thomas's concurrence that alters our evaluation of *Dole*'s third prong.

The prison officials also argue that RLUIPA exceeds Congress's spending powers because it imposes a "recipient-wide" rather than a "program-specific" condition. They insist that, although Congress may prohibit a specific, funded *program* from engaging in particular activity, it may not prohibit the *recipients* of federal funds from engaging in that activity outside the federally funded program. The prison officials cite several cases in support of this proposition, including *Federal Communications Commission v. League of Women Voters*, 468 U.S. 364 (1984) (hereinafter *FCC*), and *Rust v. Sullivan*, 500 U.S. 173 (1991). These cases, however, are clearly distinguishable from the present case.

In *FCC*, Congress prohibited editorializing by radio and television stations that received funding from the Corporation for Public Broadcasting. 468 U.S. at 366. The Supreme Court held that the condition on federal funding violated the stations' First Amendment free-speech rights, emphasizing that the condition barred stations from using even entirely private funds to finance editorializing. *Id.* at 400. In *Rust*, federal regulations prohibited programs that received federal funds from engaging in specified abortion-related conduct and counseling. 500 U.S. at 189-91. The Court upheld the restriction after noting that recipients were still free to engage in the prohibited conduct outside of the federally funded program. *Id.* at 196 ("The Secretary's regulations do not force the Title X grantee to give up abortion-related speech; they merely require that the grantee keep such activities separate and distinct from Title X activities.").

In *FCC*, *Rust*, and the other cases cited by the prison officials, the federal government imposed conditions that restricted the recipients' ability to exercise a fundamental right—the First Amendment right to free speech. Ohio's prison officials, in contrast, have no constitutional right, much less a fundamental constitutional right, to limit the exercise of religion by inmates. That makes free-speech cases like *FCC* and *Rust* inapplicable. In light of *Dole*, these cases cast little doubt on Congress's power to impose a condition limiting a state's ability to interfere with the free exercise of religion.

Turning now to the fourth prong of *Dole*, we note that the prison officials do not claim that the "financial inducement offered by Congress" is unduly "coercive," *Dole*, 483 U.S. at 211. We therefore have no need to discuss the fourth *Dole* factor in the present case.

This leaves us with the contention of the prison officials under *Dole*'s final prong—that the funding condition is independently barred by another constitutional provision, the Tenth Amendment. Our analysis necessarily begins with *Dole,* where the Court observed that "a perceived Tenth Amendment limitation on congressional regulation of state affairs [does] not concomitantly limit the range of conditions legitimately placed on federal grants." *Id.* at 210. To the contrary, the Court said, conditions on funding do not intrude on state sovereignty because they leave each state with "the 'simple expedient' of not yielding to what [the state] urges is federal coercion." *Id.* (citing *Oklahoma v. Civil Serv. Comm'n*, 330 U.S. 127, 143-44 (1947)).

The prison officials nonetheless insist that the Supreme Court's post-*Dole* decisions in *New York v. United States*, 505 U.S. 144 (1992), and *Printz v. United States*, 521 U.S. 898 (1997), have altered the constitutional calculus. We disagree. In *New York*, the Supreme Court addressed a federal law that forced states either to dispose of radioactive waste by a certain date or to "take title" to the waste and assume the liability of those who generated it. *See* 505 U.S. at 153-54. The Court held the "take title" provision unconstitutional because it would "commandeer state governments into the service of federal regulatory purposes." *Id.* at 175.

*Printz*, the other case relied on by the prison officials, involved the Brady Act, a federal law that establishes a national system for background checks of prospective handgun buyers. Interim provisions of the Brady Act required the states' chief law-enforcement officers to conduct background checks on prospective handgun buyers until the national system was in place. *Printz*, 521 U.S. at 902-04. The Court held that the interim provisions were unconstitutional because Congress may not "command the State's officers . . . to administer or enforce a federal regulatory program." *Id*. at 935. Together, *New York* and *Printz* stand for the unexceptionable proposition that Congress cannot force the states to enact or administer a federal regulatory scheme.

*New York* and *Printz* are simply not applicable to the present case because RLUIPA does not require the states to enact or administer a federal program. The Act does not demand that states take any affirmative action at all. To the contrary, RLUIPA requires states to refrain from acting in a way that interferes with inmates' exercise of religion, unless the states' actions are the least restrictive means of furthering a compelling governmental interest.

In this regard, RLUIPA is similar to the federal law that the Supreme Court upheld in *Reno v. Condon*, 528 U.S. 141, 144 (2000). *Condon* concerned the Driver's Privacy Protection Act of 1994 (DPPA), a federal statute that prohibits the states from disclosing drivers' personal information without the drivers' consent. The Court upheld the DPPA because the law does not require the states "to enact any laws or regulations" and does not "require state officials to assist in the enforcement of federal statutes." *Id*. at 151. Instead, the statute simply "regulates the States as the owners of data bases." *Id*. That rationale applies with equal force to the present case. RLUIPA does not require states to enact any laws, assist in the enforcement of federal law, or take any other affirmative action. Rather, Congress prohibited the operators of prisons and other institutions that receive federal funding from engaging in certain conduct.

We also note that the Seventh and Ninth Circuits have rejected Tenth Amendment challenges similar to the one mounted by Ohio's prison officials, and we again find their analyses instructive. *See Charles*, 348 F.3d at 609; *Mayweathers*, 314 F.3d at 1069. RLUIPA, the Ninth Circuit concluded, "does not regulate the operation of prisons," a traditional area of state control. *Mayweathers*, 314 F.3d at 1069. Moreover, states that find RLUIPA's requirements too burdensome "remain free to forgo federal funding and opt out of its mandates." *Id*. The Seventh Circuit in *Charles* extrapolated a more general proposition from *Dole* and *New York*, reasoning that "the Tenth Amendment does not restrict the range of conditions Congress can impose on the receipt of federal funds, even if Congress could not achieve the goal(s) of those conditions directly." 348 F.3d at 609. These two points—that RLUIPA does not regulate a state's operation of its prison system and that the Tenth Amendment does not limit Congress's power to place conditions on federal funding—convincingly refute the prison officials' contention that RLUIPA improperly regulates states and state affairs.

In sum, we are satisfied that RLUIPA fits comfortably within each of the limitations set forth by the Supreme Court in *Dole*. We therefore hold that the Act is a permissible exercise of Congress's Spending Clause powers.

## C.      Commerce Clause challenge

Because we uphold RLUIPA's validity under the Spending Clause, we have no need to consider whether the statute is also sustainable under the Commerce Clause. *See Charles*, 348 F.3d at 609 ("Because we find that RLUIPA is valid under the Spending Clause, we need not involve ourselves in arguments concerning the Commerce Clause."); *Mayweathers*, 314 F.3d at 1068 n.2 ("Having established that RLUIPA satisfies . . . the *Dole* test [,] . . . we need not decide whether Congress also had the authority to pass RLUIPA under the Commerce Clause."). ODRC does not

dispute that it has received and is continuing to receive federal funding, and receipt of those funds establishes the only jurisdictional basis needed for RLUIPA to apply to Ohio's prison system.

### III. CONCLUSION

For all of the reasons set forth above, we hold that RLUIPA is valid Spending Clause legislation that is not barred by the Tenth Amendment. We therefore **AFFIRM** the judgment of the district court and **REMAND** the cases for further proceedings consistent with this opinion.