**Ginnah MUHAMMAD, Plaintiff,**

v.

**Paul J. PARUK, in his capacity as Judge of the 31st District Court for the City of Hamtramck, Defendants.**

Civil No. 07–11342.

United States District Court,
E.D. Michigan,
Southern Division.

May 12, 2008.

Nabih H. Ayad, Nabih H. Ayad Assoc., Canton, MI, for Plaintiff.

Margaret A. Nelson, Mich. Department of Attorney General, Lansing, MI, for Defendant.

## OPINION AND ORDER

JOHN FEIKENS, District Judge.

Plaintiff Ginnah Muhammad filed this action against Defendant Paul J. Paruk, in

his official capacity as Judge of the 31st District Court for the City of Hamtramck, alleging violations of her First Amendment right to free exercise of her religion and her civil right to access to the court system. Paruk has brought a motion to dismiss Muhammad's claims, arguing that dismissal is appropriate based on the *Rooker–Feldman* Doctrine, the *Younger* Abstention Doctrine, judicial immunity, the Declaratory Judgment Act, and Muhammad's failure to state a claim upon which relief can be granted. For the reasons set forth below, I decline to exercise jurisdiction over this matter and GRANT Paruk's motion to dismiss.

### FACTUAL AND PROCEDURAL BACKGROUND

Ginnah Muhammad is an African–American women who practices the religion of Islam. As part of her religious practice, Muhammad wears a hijab, a head scarf with a veil that covers her face except for her eyes. Muhammad wears the hijab whenever she is outside of her home.

During the summer of 2006, Muhammad rented a car from Enterprise Leasing of Detroit. Enterprise charged Muhammad for damage to the rental car and Muhammad disputed the charges. On August 22, 2006, Muhammad filed an action against Enterprise in the Small Claims Division of Michigan's 31st District Court. On September 20, 2006, Enterprise filed its own small claims action against Muhammad in the same court.

The 31st District Court is a single judge court presided over by State Court Judge Paul J. Paruk. In small claims actions, parties are given the opportunity to present evidence including testimony. Paruk then weighs the evidence and applies the law to reach his verdict.

On October 11, 2006, Muhammad appeared before Paruk for a hearing on her small claims action. As the hearing began, Paruk told Muhammad that she would have to remove her veil in order to testify. Paruk explained that he needed to see Muhammad's face while she testified in order to weigh the credibility of her testimony.

> "One of the things that I need to do as I am listening to testimony is I need to see your face and I need to see what's going on and unless you take [the veil] off, I can't see your face and I can't tell whether you're telling me the truth or not and I can't see certain things about your demeanor and temperament that I need to see in a court of law."

Small Claims Hearing Transcript, Paruk's Motion to Dismiss, Exhibit 1, pg. 3–4.

Muhammad responded that she was unwilling to take off her veil before Paruk but would do so before a female judge.

> "I'm a practicing Muslim and this is my way of life and I believe in the Holy Koran and God is first in my life. I don't have a problem with taking my veil off if it's a female judge, so I want to know do you have a female that I could be in front of then I have no problem but otherwise, I can't follow that order."

*Id.* at 4. Paruk explained that there was not a female judge and then asserted that Muhammad's choice to wear a veil was not a "religious thing" but rather a "custom thing." *Id.* Muhammad strenuously objected to Paruk's assertion and the disagreement ended with Paruk giving Muhammad two choices: take the veil off to present testimony or have the case dismissed. *Id.* at 5. Muhammad chose not to take her veil off and Paruk dismissed her complaint without prejudice. *Id.* at 6.

On November 1, 2006, Muhammad removed Enterprise's small claims suit against her to the General Civil Division of the 31st District Court. Following the removal, Muhammad filed a motion asking Paruk to recuse himself from the case.

Paruk considered the motion and issued a written opinion denying it. Enterprise then filed a motion for summary judgment on its claims. On June 27, 2007, Paruk granted Enterprise's motion and awarded it $2,083.24 in damages. Muhammad appealed the decision. Her appeal is currently pending before the Wayne County Circuit Court.

On April 11, 2007, Muhammad filed this suit against Paruk in federal court under 42 U.S.C. § 1983, alleging claims for violations of her First Amendment right to free exercise of her religion and her civil right to access to the courts. In her suit, Muhammad requests injunctive and declaratory relief. Paruk has filed a motion to dismiss Muhammad's claims. The issues raised in the motion have been fully briefed and a hearing has been held on the motion.

## ANALYSIS

In support of his motion, Paruk presents a number of different arguments for dismissal: (1) this Court is precluded from exercising jurisdiction over this action by the *Rooker–Feldman* Doctrine; (2) this Court should abstain from exercising jurisdiction over this case based on the *Younger* Abstention Doctrine; (3) judicial immunity shields Paruk from Muhammad's claims for injunctive relief; (4) this Court should decline to exercise jurisdiction over Muhammad's declaratory judgment action; and (5) Muhammad has failed to state claims upon which relief can be granted. I will address each of these arguments individually.

### A. The *Rooker–Feldman* Doctrine

■ The *Rooker–Feldman* Doctrine prohibits federal courts below the Supreme Court from exercising "appellate jurisdiction over the decisions [or] proceedings of state courts, including claims that are inextricably intertwined with issues decided in state court proceedings."

*Executive Arts Studio, Inc. v. City of Grand Rapids,* 391 F.3d 783, 793 (6th Cir. 2004) (citations omitted). The Supreme Court has explained that the *Rooker–Feldman* Doctrine is confined to "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus.,* 544 U.S. 280, 284, 125 S.Ct. 1517, 161 L.Ed.2d 454 (2005).

■ Two of the three elements necessary for the *Rooker–Feldman* Doctrine to apply are present in this case. First, this federal action was filed by Muhammad, the party who lost in the state court proceeding that gave rise to this lawsuit. And second, the state court judgment in question was rendered before this case was filed. The third element, however, is not present. The issue in Muhammad's small claims suit against Enterprise was whether she was liable for damage to a rental car. The issue in this action is whether Paruk's choice to prohibit Muhammad from testifying while wearing her veil violated her constitutional and civil rights. Accordingly, considering the claims Muhammad has brought in federal court would not constitute exercising appellate jurisdiction over her dismissed state court claim. I find, therefore, that the *Rooker–Feldman* Doctrine does not preclude me from exercising jurisdiction over this matter.

### B. The *Younger* Abstention Doctrine

■ The *Younger* Abstention Doctrine requires a federal court to abstain from granting injunctive or declaratory relief that would interfere with pending state court proceedings. *O'Neill v. Coughlan,* 511 F.3d 638, 643 (6th Cir.2008); see *Younger v. Harris,* 401 U.S. 37, 91 S.Ct.

746, 27 L.Ed.2d 669 (1971). Courts in the Sixth Circuit consider three factors is determining whether to abstain from hearing a case based on the *Younger* Abstention Doctrine: (1) whether the underlying proceedings constitute an ongoing judicial proceeding; (2) whether the proceedings implicate important state interests; and (3) whether there is an adequate opportunity in the state proceedings to raise a constitutional challenge. *O'Neill*, 511 F.3d at 643; *Tindall v. Wayne County Friend of the Court*, 269 F.3d 533, 538 (6th Cir. 2001).

 Enterprise's suit against Muhammad is on appeal before the Wayne County Circuit Court. That state court law suit, however, was not the one that gave rise to this federal action. This action is based on events that occurred during Muhammad's small claims action against Enterprise. That suit has been dismissed and has not been refiled. Consideration of Muhammad's constitutional claims stemming from a different legal proceeding will not interfere with Enterprise's pending appeal before the Wayne County Circuit Court. I find, therefore, that the *Younger* Abstention Doctrine does not require me to abstain from exercising jurisdiction over this matter.

### C. Judicial Immunity

 Judges enjoy absolute immunity from liability for acts undertaken in their judicial capacity. *Pierson v. Ray*, 386 U.S. 547, 553–54, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967); *Brookings v. Clunk*, 389 F.3d 614, 617 (6th Cir.2004). This immunity applies unless a judge has (1) acted in a nonjudicial way or (2) performed judicial acts

in the complete absence of all jurisdiction. *Mireles v. Waco*, 502 U.S. 9, 11, 112 S.Ct. 286, 116 L.Ed.2d 9 (1991). This form of judicial immunity, however, is not available when a judge is sued in his official capacity. See *Kentucky v. Graham*, 473 U.S. 159, 167, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985)("The only immunities that can be claimed in an official-capacity action are forms of sovereign immunity that the entity, qua entity, may possess, such as the Eleventh Amendment."); *Alkire v. Irving*, 330 F.3d 802, 810–11 (6th Cir.2003)("as a result of being sued only in their official capacities, Sheriff Zimmerly and Judge Irving cannot claim any personal immunities, such as quasi-judicial or qualified immunity, to which they might be entitled if sued in their individual or personal capacities").

 When a state court judge is sued in his official capacity, the suit is essentially against the state. *Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir.1994) ("A suit against an individual in his official capacity is the equivalent of a suit against the governmental entity."). The Eleventh Amendment protects states against liability for money damages, even when an action is filed against a state actor in his or her official capacity.[1] See *Rodgers v. Banks*, 344 F.3d 587, 594 (6th Cir.2003) ("Specifically, the Eleventh Amendment bars § 1983 suits seeking money damages against states and against state employees sued in their official capacities."); *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 66, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989). The Eleventh Amendment does not, however, prohibit suits against state officers

---

1. Although the text of the Eleventh Amendment only prohibits suits against a state government by citizens of another state or citizens of a foreign state, the Supreme Court has interpreted it to preclude suits against a state government by its own citizens. See *Edelman*, 415 U.S. at 662–63, 94 S.Ct. 1347

("While the Amendment by its terms does not bar suits against a State by its own citizens, this Court has consistently held that an unconsenting State is immune from suits brought in federal courts by her own citizens as well as by citizens of another State.").

for prospective injunctive or declaratory relief. *Edelman v. Jordan*, 415 U.S. 651, 677, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974).

Along with judicial immunity and the shielding provided to state actors by the Eleventh Amendment, judges have received additional protection from Congress. In 1996, 42 U.S.C. § 1983 was amended to prohibit the granting of injunctive relief against judicial officers for acts taken in their judicial capacities, except in situations in which a declaratory decree has been violated or declaratory relief is unavailable. 42 U.S.C. § 1983; see *Kircher v. City of Ypsilanti*, 458 F.Supp.2d 439, 447–48 (2006). While severely limiting the availability of injunctive relief, the amendment to § 1983 leaves the door open for courts to grant declaratory relief in suits brought against judges for actions undertaken in their judicial capacities. See *Brandon E. ex rel. Listenbee v. Reynolds*, 201 F.3d 194, 197–98 (3rd Cir. 2000)("The language [of § 1983] is not an express authorization of declaratory relief, but simply a recognition of its availability or unavailability, depending on the circumstances, which the statute does not delineate.").

In this suit, Muhammad is suing Paruk in his official capacity as a state court judge and is seeking both injunctive and declaratory relief under § 1983. Because Paruk was acting in his judicial capacity when he chose not to allow Muhammad to testify while wearing her veil, he is not subject to injunctive relief under § 1983. Under the statute, Muhammad may, however, maintain her claims for declaratory relief.

## D. Declaratory Judgment

▮ The Declaratory Judgment Act states that "[i]n a case of actual controversy within its jurisdiction ... any court of the United States ... may declare the rights and other legal relations of any interested party seeking such declaration." 28 U.S.C. § 2201. The Supreme Court has emphasized that the "Act provides that a court '*may* declare the rights and other legal relations of any interested party,' not that it must do so." *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, ——, 127 S.Ct. 764, 767, 166 L.Ed.2d 604 (2007) (quoting 28 U.S.C. § 2201). "This text has long been understood to confer on federal courts 'unique and substantial discretion in deciding whether to declare the rights of litigants.'" *Id.* (quoting *Wilton v. Seven Falls Co.*, 515 U.S. 277, 289–86, 115 S.Ct. 2137, 132 L.Ed.2d 214 (1995)). The Sixth Circuit has provided five factors a district court should consider in deciding whether to exercise jurisdiction over a declaratory judgment action:

(1) whether the judgment would settle the controversy;

(2) whether the declaratory judgment action would serve a useful purpose in clarifying the legal relations at issue;

(3) whether the declaratory remedy is being used merely for the purpose of "procedural fencing" or "to provide an arena for a race for res judicata;"

(4) whether the use of a declaratory action would increase the friction between our federal and state courts and improperly encroach on state jurisdiction; and

(5) whether there is an alternative remedy that is better or more effective.

*Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 554 (6th Cir.2008)(citing *Grand Trunk W. R.R. Co. v. Consol. Rail Co.*, 746 F.2d 323, 326 (6th Cir.1984)). I will begin my analysis by considering the fourth factor.

## I. Friction Between Federal and State Courts

In determining whether exercising jurisdiction over this matter would increase the friction between our state and federal courts, it is useful to look briefly at what

accepting jurisdiction over Muhammad's two claims would entail.

### a. Free Exercise Claim

In *Sherbert v. Verner*, the Supreme Court found that under the First Amendment, governmental actions that substantially burden a religious practice must be justified by a compelling governmental interest. 374 U.S. 398, 402–03, 83 S.Ct. 1790, 10 L.Ed.2d 965 (1963). The Supreme Court modified the standard for free exercise claims in *Employment Division v. Smith*, explaining that the right to free exercise of religion does not relieve an individual of the obligation to comply with a valid and neutral law of general applicability. 494 U.S. 872, 878–79, 110 S.Ct. 1595, 108 L.Ed.2d 876 (1990). In response to the Supreme Court's ruling in *Smith*, Congress passed the Religious Freedom Restoration Act of 1993 ("RFRA") "to restore the compelling interest test as set forth in *Sherbert* ... and to guarantee its application in all cases where free exercise of religion is substantially burdened." 42 U.S.C. § 2000bb(b)(1). The Supreme Court, however, found that RFRA exceed the scope of Congress's power under the Fourteenth Amendment and declared it unconstitutional as applied to the states. *City of Boerne v. Flores*, 521 U.S. 507, 536, 117 S.Ct. 2157, 138 L.Ed.2d 624 (1997). In finding RFRA unconstitutional as applied to the states, the Court reinforced that its decision in Smith supplied the correct standard for deciding free exercise claims against state actors. See *Id.* at 533–35, 117 S.Ct. 2157; accord *Hansen v. Ann Arbor Public Schools*, 293 F.Supp.2d 780, 809 (E.D.Mich.2003)(applying the *Smith* standard to a free exercise claim brought against state actors); *Jocham v. Tuscola County*, 239 F.Supp.2d 714, 724 (E.D.Mich.2003)(recognizing *Smith* as the governing precedent in free exercise cases against state actors). In 2000, Congress passed the Religious Land Use and Institutionalized Person Act (RLUIPA), requiring that strict scrutiny be applied to free exercise claims involving land use regulation or institutionalized persons. 42 U.S.C. § 2000cc *et seq.*; see *Cutter v. Wilkinson*, 423 F.3d 579, 582 (6th Cir.2005).

■ Because Muhammad's free exercise claim is against a state actor and is not subject to RLUIPA, the standard set forth in *Smith* would apply. Under this standard, if Paruk has a valid, neutral and generally applicable policy of requiring witnesses to keep their faces visible while giving testimony, that policy would not violate Muhammad's right to free exercise of her religion. Determining if Paruk has such a policy and, if he does, deciding whether it is valid, neutral and generally applicable would necessitate a detailed examination of how Paruk manages his court room as a state court judge. Conducting this type of review as a federal judge would undoubtably increase friction in the relationship between our state and federal courts. I find, therefore, that respect for the relationship between our state and federal courts weighs heavily against exercising jurisdiction over Muhammad's declaratory judgment action for violation of her right to free exercise of her religion.

### b. Access to the Courts

■ To establish a backwards-looking denial of access to the courts claim, a plaintiff must show: (1) the loss of a non-frivolous or arguable underlying claim; (2) the official acts frustrating the litigation; and (3) a remedy that may be awarded as recompense but is not otherwise available in a future suit. See *Christopher v. Harbury*, 536 U.S. 403, 413–14, 122 S.Ct. 2179, 153 L.Ed.2d 413 (2002). Accepting jurisdiction over this claim could require me to determine whether Muhammad's state court claim was "non-frivolous" or "arguable" and to review whether Judge Paruk's actions frustrated Muhammad's litigation.

This kind of review also threatens to increase the tension between our state and federal courts and weighs against exercising jurisdiction over Muhammad's declaratory judgment action for denial of access to the courts.

■ The importance of the relationship between our federal and state courts and the extent to which this factor is implicated in this suit compel me to decline to exercise jurisdiction over Muhammad's declaratory judgment action. Although I believe that these grounds are sufficient to support my decision not to exercise jurisdiction, other applicable factors also favor withholding jurisdiction over Muhammad's claims.

## II. Settling Controversy and Clarifying Legal Relations

Because the first two factors are closely related, I will consider them together. Declaring the rights of the parties in this action would not settle an active dispute. The action that gave rise to this suit has been dismissed without prejudice and has not been refiled. Because injunctive relief is unavailable, even if Muhammad were to succeed in receiving a declaratory judgment it would be limited to the facts of this particular case and would not have a binding effect in future cases. Thus, exercising jurisdiction over this declaratory judgment action would do little to settle a controversy or clarify the legal relationship between the parties.

## III. Alternative Remedy

Muhammad could have received state court review of Paruk's decision to prohibit her from testifying while wearing her veil. Muhammad is correct that she could not appeal Paruk's decision to dismiss her case. Because the case was dismissed without prejudice, however, she could have refiled it in the general civil division. If she had refiled her case in the general civil division, it still would have been before Judge Paruk, but she would have been entitled to an appellate review of his actions and decisions. Muhammad also had the opportunity to file counter claims in Enterprise's suit against her but choose not to do so. That action is currently on appeal in the Wayne County Circuit Court. Muhammad had the opportunity to seek state court review of Paruk's choice to prohibit her from testifying while wearing her veil, but choose not to do so. State court review would have avoided many of the federalism concerns discussed above. I find, therefore, that this factor also favors withholding jurisdiction over Muhammad's declaratory judgment claims.

Because I find that the applicable factors weigh in favor of withholding jurisdiction, I decline to exercise jurisdiction over Muhammad's claims for declaratory judgment.

## E. Failure to State a Claim

Because Muhammad's claims for injunctive relief are bared by § 1983, and I have decided not to exercise jurisdiction over her claims for declaratory relief, it is unnecessary for me to decide whether she has stated claims upon which relief can be granted.

## CONCLUSION

For the reasons set forth above, I find that Muhammad's claims for injunctive relief are precluded by § 1983, and I decline to exercise jurisdiction over her claims for declaratory relief. Accordingly, I GRANT Paruk's motion to dismiss.

**IT IS SO ORDERED.**