Dear Colonel Paul A. Drula
You have asked for our opinion regarding the following questions:
1. If an individual wearing a veil or mask or other face covering wishes to enter a courthouse, may a deputy sheriff assigned to court security require that individual to remove the covering momentarily at the security checkpoint at the entrance to the courthouse? Is the answer to this question different if the individual asserts a religious reason for remaining veiled or masked?
2. What operational procedures or measures would be appropriate to enforce a requirement that individuals entering the courthouse be identifiable by face while demonstrating respect for the individual's religiously based practice?
In our opinion, the answers to your questions are as follows:
1. A deputy sheriff may require individuals entering the courthouse to remove masks, veils, or other face coverings at the security checkpoint, without regard to whether the individual claims a religious basis for remaining masked or veiled, if the sheriff's office has a neutral and generally applicable policy of requiring removal of face coverings for security purposes.
2. To minimize potential conflicts between the requirements of courthouse security and the religious practices of individuals entering the courthouse, it would be useful if security details were comprised of both male and female officers and if a private space w ere available at the entrance of the courthouse for those individuals whose religion discourages removal of a head covering in public. *Page 82 
 I Analysis
A. Responsibility of Sheriff for Courthouse Security
In Maryland, a sheriff has the duties assigned to that office at common law, except to the extent that those duties may be modified by statute or court rule. Maryland Constitution, Article IV, § 44; Soper v. MontgomeryCounty, 294 Md. 331, 337, 449 A.2d 1158 (1982). Courthouse security was one of the responsibilities of the sheriff under the common law. See
78 Opinions of the Attorney General 103, 104-5 (1993). A sheriff retains the responsibility to provide reasonable measures for courthouse security subject to the supervision of the court. Id. at 106.[1] Such measures may involve a request that an individual entering the courthouse temporarily remove a veil, mask, or other head covering for identification and security purposes.
B. Face and Head Coverings Based in Religious Belief or Practice
Your inquiry raises the question whether the free exercise clause of the First Amendment[2] and laws such as the federal Religious Freedom Restoration Act of 1993 ("RFRA")[3] affect the sheriff's authority to require temporary removal of a face covering headgear when the individual wears the head covering for religious *Page 83 
reasons. In recent years, several courts have considered the circum stances under which a court or security personnel may require an individual to remove religiously-inspired headgear.
The case of Muhammad v. Paruk, 553 F. Supp. 2d 893 (E.D. Mich 2008), arose out of a law suit brought in small claims court by a Muslim woman[4] who wore religious head covering — essentially a scarf and veil that covered her face except for her eyes — whenever she appeared in public. The small claims court judge insisted that she remove the veil while she testified so that he could assess her credibility. When she refused to do so, the judge dismissed the case. The woman then brought a federal suit against the state court judge, arguing that he had violated her First Amendment right to freely exercise her religion and her civil right of access to the courts.
The federal district court declined to exercise jurisdiction over the claims, but provided a succinct analysis of the standards for assessing whether the required removal of a head covering violates the First Amendment free exercise clause and RFRA. The court first described the leading Supreme Court decisions:
 In Sherbert v. Verner, the Supreme Court found that under the First Amendment, governmental actions that substantially burden a religious practice must be justified by a compelling governmental interest. 374 U.S. 398, 402-03(1963). . . . The Supreme Court modified the standard for free exercise claims in Employment Division v. Smith, explaining that the right to free exercise of religion does not relieve an individual of the obligation to comply with a valid and neutral law of general applicability. 494 U.S. 872, 878-79 (1990). . . .
553 F. Supp. 2d at 900. The Court then assessed the effect of the RFRA: *Page 84 
 In response to the Supreme Court's ruling in Smith, Congress passed [RFRA] "to restore the compelling interest test as set forth in Sherbert . . . and to guarantee its application in all cases where free exercise of religion is substantially burdened." 42 U.S.C. § 2000bb(b)(1). The Supreme Court, however, found that RFRA exceeded the scope of Congress's power under the Fourteenth Amendment and declared it unconstitutional as applied to the states. City of Boerne v. Flores, 521 U.S. 507, 536 (1997). . . . In finding RFRA unconstitutional as applied to the states, the Court reinforced that its decision in Smith supplied the correct standard for deciding free exercise claims against state actors. See Id.
at 533-35 . . .; accord Hansen v. Ann Arbor Public Schools, 293 F.Supp.2d 780, 809 (E.D. Mich. 2003) (applying the Smith standard to a free exercise claim brought against state actors); Jocham v. Tuscola County, 239 F.Supp.2d 714, 724 (E.D. Mich. 2003) (recognizing Smith as the governing precedent in free exercise cases against state actors). In 2000, Congress passed the Religious Land Use and Institutionalized Person Act (RLUIPA), requiring that strict scrutiny be applied to free exercise claims involving land use regulation or institutionalized persons. 42 U.S.C. § 2000cc et seq.; see Cutter v. Wilkinson, 423 F.3d 579, 582 (6th Cir. 2005).
Id. The court concluded that the Smith standard would apply to the situation before it:
 Because [plaintiff's] free exercise claim is against a state actor and is not subject to RLUIPA, the standard set forth in Smith would apply. Under this standard, if [the small claims court judge] has a valid, neutral and generally applicable policy of requiring witnesses to keep their faces visible while giving testimony, that policy would not violate *Page 85 
Muhammad's right to free exercise of her religion.
Id.
Before RFRA was declared unconstitutional as applied to state actors, another federal court had considered whether a state requirement that an individual temporarily remove a religious headscarf for security reasons violated that statute. Bint-Ishmawiyl v. Vaughn, 1995 WL 461949
(E.D. Pa. 1995). In that case, a devout Muslim woman who wished to visit her son in a state prison refused to remove her veil in the presence of men who were not members of her family. She was initially denied access to the prison under a policy that required each visitor's face to be visible upon entry and exit; however, on later occasions, when a female corrections officer was present, she unveiled in the presence of such an officer and was admitted to the prison. However, the prison refused to guarantee that a female correctional officer would always be available. The woman sought an injunction against prison officials, alleging that the policy violated her rights under the First Amendment and RFRA.
The Court refused to grant an injunction, holding that "[t]here can be no doubt that the defendants have a compelling interest in making sure that visitors to inmates are indeed the persons they profess to be, and, of greater importance, that the person leaving the prison after a visit is indeed the same person as the visitor who entered the prison. In short, there is a compelling state interest in viewing the faces of prison visitors." The Court also concluded that allowing unveiling solely in the presence of a female officer was the least restrictive means of furthering that interest and that limiting her visits to occasions when a female officer was available was not unreasonable.See also Freeman v. Florida, 2003 WL 21338619 (Fla. Cir.Ct. 2003) (requiring Muslim woman to unveil face in private room with only female employees for driver's license photo did not violate free exercise clause of First Amendment or Florida version of RFRA).
You have inquired about a situation in which a deputy sheriff would require an individual to remove temporarily a veil, mask, or other face covering for identification purposes as a condition of entering the courthouse. In our view, the analysis in Paruk also applies to these circumstances. A deputy sheriff is a State actor; *Page 86 
therefore, RFRA does not apply and the Smith standard governs.[5] Under that standard, a deputy sheriff may compel an individual to comply with a valid and neutral policy of general applicability. See United States v.James, 328 F.3d 953, 957 (7th Cir. 2003) ("The Constitution . . . does not entitle anyone to wear religious headgear in places where rules of general application require all heads to be bare or to be covered in uniform ways . . ."). Such a policy should be reasonably related to courthouse security and not be applied in an arbitrary manner — i.e., it must not depend on individual discretion, prejudice, or preference. Rather, it should be applied to all who enter the courthouse in a consistent manner.
C. Possible Operational Procedures
You have also asked about appropriate operational procedures to enforce a requirment that all individuals entering the courthouse be identifiable by face. An Attorney General opinion is not an occasion to prescribe detailed operational procedures for a sheriff's office. Nor would we claim expertise in security measures. However, our review of the cases described above leads us to make some suggestions for the screening of individuals who wear masks or veils for religious reasons.
It appears that the cases concerning religiously-inspired masks and veils generally involve women who would be willing to remove the head covering for screening purposes without compromising their religious scruples if it is done in private outside the view of the general public and of men, in particular. See, e.g., Kaukab v. Harris, 2003 WL 21823752
(N.D. Ill. 2003); Bint-Ishmawiyl v. Vaughn, 1995 WL 461949 (E.D. Pa. 1995). Conceivably, there may be men who wear head coverings who would also decline to remove the head covering in public for religious reasons. Accordingly, the assignment of officers of both genders to the security detail and the *Page 87 
designation, if possible, of a private space for removing a head covering may help avoid a confrontation between courthouse security requirements and the religious practices of some who enter the courthouse. Of course, a professional and respectful demeanor also helps eliminate unnecessary tensions.
 II Conclusion
In summary, it is our opinion that:
1. A deputy sheriff may require individuals entering the courthouse to remove masks, veils, or other face coverings at the security checkpoint, without regard to whether the individual claims a religious basis for remaining masked or veiled, if the sheriff's office has a neutral and generally applicable policy of requiring removal of face coverings for security purposes.
2. To minimize potential conflicts between the requirements of courthouse security and the religious practices of individuals entering the courthouse, it would be useful if security details were comprised of both male and female officers and if a private space w ere available at the entrance of the courthouse for those individuals whose religion discourages removal of a head covering in public.
Douglas F. Gansler Attorney General
H. Scott Curtis Assistant Attorney General
Robert N. McDonald Chief Counsel Opinions and Advice
[1] With respect to the Sheriff of Prince George's County, the Legislature has affirmed that the Sheriff and deputy sheriffs are responsible for "the security of all State and county courts . . ." Annotated Code of Maryland, Courts Judicial Proceedings Article, § 2-309(r)(8)(i)3.
[2] An analogous, though differently worded, provision appears in Article 36 of the Maryland Declaration of Rights. The analysis of the "free exercise" guarantee in Article 36 is generally similar to that under the First Amendment. Archdiocese of Washington v. Moersen,399 Md. 637, 640-41, 925 A.2d 659 (2007); see also Friedman, The Maryland State Constitution (2006) at 43; 79 Opinions of the Attorney General 56, 59 n. 3 (1994). We are not aware of any reported cases in Maryland applying Article 36 in the context of a policy involving the removal of face coverings.
[3] Pub.L. No. 103-141, codified at 42 U.S.C. § 2000bb et seq.
[4] While most of the reported cases appear to concern Muslim women who wear a hijab or niqab, the wearing of a head or face covering for religious reasons is not unique to Islam. See Abdo, The Legal Status ofHijab in the United States: A Look at the Sociopolitcal Influences onthe Legal Right to Wear the Muslim Headscarf, 5 Hastings Race Poverty L.J. 441, 450 (2008).
[5] A strict scrutiny standard might still be applied by a court if it concluded that the wearing of headgear constitutes both speech and the exercise of religion and that the individual enjoyed a "hybrid" constitutional protection arising out of both free speech and free exercise. See Isaacs v. Board of Education of Howard County,40 F. Supp. 2d 335, 338 (D.Md. 1999) (analysis with respect to public school "no hats" policy). However, it is not clear that free speech would be implicated by the temporary removal — as opposed to an outright prohibition — of a head covering. In any event, it is likely that such a policy would survive strict scrutiny as a narrowly tailored effort to further a compelling interest in courthouse security. *Page 88